# United States Court of Appeals

*for the*

# First Circuit

---

Case No. 22-1843

KAMBIS ANVAR; MICHELLE DRUM,

*Plaintiffs-Appellants,*

VINCENT COLAPIETRO; MICHAEL OSEAN,

*Plaintiffs,*

v.

ELIZABETH K. DWYER, in her official capacity as Interim Director of RI Department of Business Regulation; PETER F. NERONHA, in his official capacity as Attorney General of Rhode Island; RHODE ISLAND RESPONSIBLE BEVERAGE ALCOHOL COALITION, INC.,

*Defendants-Appellees*

---

APPEAL FROM A FINAL JUDGMENT OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND, 1:19-CV-00523

## BRIEF OF DEFENDANT-APPELLEE RHODE ISLAND RESPONSIBLE BEVERAGE ALCOHOL COALITION, INC.

GERALD J. PETROS
RYAN M. GAINOR
HINCKLEY ALLEN & SNYDER LLP
100 Westminster Street, Suite 1500
Providence, Rhode Island 02903
(401) 274-2000
gpetros@hinckleyallen.com
rgainor@hinckleyallen.com

DEBORAH A. SKAKEL
BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020
(212) 885-5000
deborah.skakel@blankrome.com

*Attorneys for Defendant-Appellee Rhode Island Responsible Beverage Alcohol Coalition, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for Defendant-Appellee Rhode Island Responsible Beverage Alcohol Coalition, Inc. ("RIRBAC") states that it is a non-profit association of certain of Rhode Island's licensed alcohol wholesalers.  It has no parent corporation.  No publicly held corporation owns 10 percent or more of its stock.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS........................................................................................ ii

TABLE OF AUTHORITIES ................................................................................ iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..................................... viii

ISSUES PRESENTED........................................................................................... 1

STATEMENT OF THE CASE............................................................................... 3

      A.    The Challenged Provisions.................................................................. 3

      B.    Procedural Background ........................................................................ 5

      C.    The District Court's Decision .............................................................. 6

SUMMARY OF ARGUMENT .............................................................................. 8

ARGUMENT ........................................................................................................ 10

I.     LEGAL FRAMEWORK FOR ASSESSING A COMMERCE CLAUSE
      CHALLENGE TO AN ALCOHOL REGULATION ................................. 10

II.    THE DISTRICT COURT CORRECTLY CONCLUDED THAT THE
      CHALLENGED LAWS ARE CONSTITUTIONAL UNDER
      TENNESSEE WINE'S DIFFERENT INQUIRY TEST............................. 14

      A.    Concrete Evidence In The Record Shows The Retailer Presence
           Requirement Promotes Rhode Islanders' Health and Safety ............. 18

      B.    Concrete Evidence In The Record Shows The In-State Wholesaler
           Purchase Requirement Promotes Rhode Islanders' Health and
           Safety ................................................................................................ 22

      C.    This Court Should Affirm The District Court's Judgment On The
           Alternative Grounds That Plaintiffs-Appellants' Proposed
           Nondiscriminatory Alternative – Compelling Rhode Island To

Adopt A Permitting System Like That Other States Have For Out-of-State Winery Direct Shipping – Is Not Reasonable ........................26

    i.    Unsupported "pose no threat" predicate ...................................27

    ii.    No "reasonable alternative" ........................................................32

III.    THE CHALLENGED REQUIREMENTS ARE CONSTITUTIONAL FOR ADDITIONAL REASONS THAT SUPPORT AFFIRMANCE ........38

IV.    THAT COMMON CARRIER SHIPMENT IS "THE ONLY FEASIBLE WAY" OUT-OF-STATE RETAILERS CAN DELIVER WINE TO RHODE ISLAND CONSUMERS DOES NOT RENDER THE BAN ON THE USE OF COMMON CARRIERS BY ANY RETAILER UNCONSTITUTIONAL UNDER THE DORMANT COMMERCE CLAUSE ...................................................................................................43

V.    THIS COURT SHOULD NOT CONSIDER THE WAIVED CLAIM CONCERNING THE SO-CALLED "PERSONAL TRANSPORTATION LIMIT" .....................................................................46

CONCLUSION .....................................................................................................48

CERTIFICATE OF COMPLIANCE .......................................................................50

ADDENDUM OF STATUTES AND REGULATIONS

# TABLE OF AUTHORITIES

<div align="right">Page(s)</div>

## CASES

*B-21 Wines, Inc. v. Bauer, 36 F. 4th 214, 222* (4th Cir. 2022), *cert. denied,* ___ U.S. ___,143 S. Ct. 567 (2023)...............................13, 40, 41, 42, 43

*Block v. Canepa*,
    No. 20-3686, 2022 WL 4133221 (S.D. Ohio Sept. 12, 2022)...........................13

*Breard v. Alexandria*,
    341 U.S. 622 (1951)...............................................................................44

*Brooks v. Vassar*,
    462 F.3d 341 (4th Cir. 2006) ...............................................................42

*Cherry Hill Vineyard, LLC v. Baldacci*,
    505 F.3d 28 (1st Cir. 2007)................................................34, 39, 40, 45

*Chiang v. Verizon New England Inc.*,
    595 F.3d 26 (1st Cir. 2010).....................................................................26

*Chicago Wine Co. v. Holcomb*,
    532 F. Supp. 3d 702 (S.D. Ind. 2021).................................................13

*Clark v. Jeter*,
    486 U.S. 456 (1988).................................................................................12

*Cooper v. Tex. Alcoholic Beverage Comm'n*,
    820 F.3d 730 (5th Cir. 2016), *cert. denied sub nom., Tex. Package Stores Ass'n v. Fine Wine & Spirits of N. Tex.*, ___ U.S. ___, 137 S. Ct. 494 (2016).................................................................................42

*Escribano-Reyes v. Prof'l Hepa Certificate Corp.*,
    817 F.3d 380 (1st Cir. 2016)..............................................................15

*Exxon Corp. v. Maryland*,
    437 U.S. 117 (1978).........................................................................44, 45

*Family Winemakers of California v. Jenkins*,
    592 F.2d 1 (1st Cir. 2010)........................................................ viii, 12, 39

*Fire & Police Pension Ass'n of Colorado v. Abiomed, Inc.*,
   778 F.3d 228 (1st Cir. 2015) .................................................................. 8

*Fryar v. Curtis*,
   485 F.3d 179 (1st Cir. 2007) ........................................................... 46, 47

*Granholm v. Heald*,
   544 U.S. 460 (2005) ................................................................... *passim*

*Jelovsek v. Bredesen*,
   545 F.3d 431 (6th Cir. 2008) .............................................................. 42

*Lebamoff Enterprises Inc. v. Whitmer*,
   956 F.3d 863 (6th Cir. 2020), *cert. denied*, ___ U.S. ___, 141 S.
   Ct. 1049 (2021) ........................................................................ *passim*

*LimoLiner, Inc. v. Dattco, Inc.*,
   919 F.3d 86 (1st Cir. 2019) ................................................................ 26

*Missouri v. Jenkins*,
   515 U.S. 70 (1995) ........................................................................... 46

*Najas Realty, LLC v. Seekonk Water Dist.*,
   821 F.3d 134 (1st Cir. 2016) ................................................................ 7

*North Dakota v. U.S.*,
   495 U.S. 423 (1990) ................................................................. 3, 38, 39

*Pena v. Honeywell Int'l Inc.*,
   No. CV 15-179 WES, 2018 WL 582579 (D.R.I. Jan. 29, 2018),
   *aff'd*, 923 F.3d 18 (1st Cir. 2019) .................................................... 15

*Sarasota Wine Mkt., LLC v. Schmitt*,
   987 F.3d 1171 (8th Cir.), *cert. denied*, ___ U.S. ___, 142 S. Ct.
   335 (2021) ....................................................................... 16, 40, 42

*Sharp v. Hylas Yachts, LLC*,
   872 F.3d 31 (1st Cir. 2017) ................................................................ 46

*Tannins of Indianapolis v. Cameron*,
   No. 3:19-CV-504-DJH-CHL, 2021 WL 6126063 (W.D. Ky. Dec.
   28, 2021) ...................................................................... 13, 41, 42

*Tennessee Wine and Spirits Retailers Association v. Thomas*,
    588 U.S. __, 139 S. Ct. 2449 (2019)...........................................................*passim*

*United States v. Bulger*,
    816 F.3d 137 (1st Cir. 2016)...................................................................46

*Wine & Spirits Retailers, Inc. v. Rhode Island*,
    481 F.3d 1 (1st Cir. 2007), *cert. denied*, 522 U.S. 889 (2007)..........................45

*Wygant v. Jackson Bd. of Ed.*,
    476 U.S. 267 (1986)............................................................................12

## STATUTES

Federal Alcohol Administration Act of 1935, 27 U.S.C. §§ 201, et
    seq. ..................................................................................25, 35, 36

R.I. Admin. Code 30-10-1.4.10 .................................................................4

R.I. Admin. Code 30-10.1.4.27.................................................................4

R.I. Gen. Law § 3-1-5 ...........................................................................37

R.I. Gen. Law § 3-1-6 ...........................................................................37

R.I. Gen. Laws § 3-4-1 ..........................................................................47

R.I. Gen. L. § 3-4-8 ..........................................................................34, 39

R.I. Gen. Law § 3-4-8(a) .........................................................................5

R.I. Gen. Law § 3-5-10 ...........................................................................4

R.I. Gen. Law § 3-6-9 ............................................................................5

R.I. Gen. Law § 3-6-10 ...........................................................................5

R.I. Gen. Law § 3-7-1 ............................................................................4

R.I. Gen. Law § 3-7-3 ............................................................................4

R.I. Gen. Law § 3-7-18 .........................................................................4, 35

R.I. Gen. Laws 3-12-1 ................................................................................20


**OTHER AUTHORITIES**

ATF Ruling 2000-1 (available at https://www.ttb.gov/rulings/2000-
    1.htm) .........................................................................................35

https://dbr.ri.gov.real-estate-and-commercial-licensing/liquor ..............................33

https://www.avalara.com/blog/en/north-america/2021/09/is-idaho-a-
    reciprocal-state-for-dtc-wine-shipping.html ......................................29

https://www.leg.state.nv.us/App/NELIS/REL/81st2021/Bill/7922/Text ...............29

https://www.stopalcoholabuse.gov/media/ReportToCongress/2018/rep
    ort_main/State_Performance_Best_Practices.pdf ..............................28

Rebecca S. Williams and Kurt M. Ribisl, *Internet Alcohol Sales to
    Minors*, Arch Pediatric Adolescent Medicine 2012; 166(9): 808-
    813 ...............................................................................................28

U.S. Const, Amend. 21, Sec. 2 ...................................................................3

U.S. Const., art. I, § 8, cl. 3 .......................................................................5

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Oral argument will aid this Court in applying the important constitutional principles set out in the United States Supreme Court's most recent decision concerning the interplay between the dormant Commerce Clause and the Twenty-first Amendment, *Tennessee Wine and Spirits Retailers Association v. Thomas*, 588 U.S. __, 139 S. Ct. 2449 (2019). This appeal seeks to overturn the District Court's reliance on *Tennessee Wine*'s "different inquiry test" notwithstanding that the Supreme Court in *Tennessee Wine* analyzed a state alcohol retailer durational residency statute challenged under the dormant Commerce Clause and, in doing so, contrasted that residency requirement with state alcohol retailer presence requirements – the same retailer presence regulation that is the subject of this appeal. *See Tenn. Wine*, 139 S. Ct. at 2474-75.

Oral argument will also aid this Court in reviewing the District Court's application of the *Tennessee Wine* standard to this case in which the challenge to Rhode Island's presence requirement for alcohol retailers (and wholesalers) puts at risk the fundamental components of the State's comprehensive alcohol regulatory system that serve to protect public health and safety. In particular, oral argument will aid this Court in understanding that *Tennessee Wine*'s constitutional principles derived from those in *Granholm v. Heald*, 544 U.S. 460 (2005), on which this Court based its decision in *Family Winemakers of California v. Jenkins*, 592 F.3d 1 (1st

Cir. 2010), underscoring the soundness of the District Court's analysis and the correctness of its judgment.

## ISSUES PRESENTED[1]

1.      The challenged Rhode Island law allows licensed in-state alcohol retailers operating within Rhode Island's comprehensive three-tier regulatory system to sell wine to Rhode Island consumers and deliver that wine using their own employees and vehicles. Should this Court affirm the District Court's judgment which held that Rhode Island's requirement that retailers have a physical presence in the State to be licensed is a permissible exercise of the State's Twenty-first Amendment authority and is not a violation of the dormant Commerce Clause because: (a) the challenged retailer presence requirement can be justified as a public health or safety measure, and (b) there is concrete evidence that the retailer presence requirement promotes public health and safety under the Supreme Court's governing standard set forth in *Tennessee Wine*?

2.      The challenged Rhode Island law also requires that licensed in-state alcohol retailers buy wine only from licensed in-state alcohol wholesalers.  This means that retailers located outside of Rhode Island who have not purchased wine from a licensed Rhode Island wholesaler may not import that wine into Rhode Island

---

[1] While Plaintiffs-Appellants include in their statement of issues the question of the constitutionality of the so-called "transportation limit" on the amount of wine that a person may transport into the State (Brief of Plaintiffs-Appellants ("Appellants' Br.") at 3; *see also id.* at 31-34), as shown in Point V below, Plaintiffs-Appellants waived and/or abandoned that issue during oral argument before the District Court (Joint Appendix ("Appx.") 461-462).

1

(whether using their own vehicles or a common carrier) for sale and delivery to a Rhode Island consumer. Should this Court affirm the District Court's judgment which held that Rhode Island's requirement that retailers purchase wine from an in-state wholesaler having a physical presence in the State is a permissible exercise of the State's Twenty-first Amendment authority and is not a violation of the dormant Commerce Clause because: (a) the challenged requirement of purchasing from a wholesaler having a presence in the State likewise can be justified as a public health or safety measure, and (b) there is also concrete evidence that the in-state wholesaler purchase requirement promotes public health and safety under the *Tennessee Wine* test?

3.     Should this Court affirm the District Court's judgment that the challenged retailer presence and in-state wholesaler purchase requirements do not violate the dormant Commerce Clause on the grounds that those requirements are essential features of the State's three-tier system of alcohol regulation?

4.     Should this Court affirm the District Court's judgment that the prohibition on delivery by common carrier does not violate the dormant Commerce Clause on the alternative grounds that the prohibition does not unconstitutionally discriminate in effect?

## STATEMENT OF THE CASE

The Twenty-first Amendment of the United States Constitution empowers States to pass laws concerning the sale and distribution of alcohol within their borders.  *See* U.S. Const. Amend. 21, Sec. 2.[2]  "[U]nder § 2, States 'remai[n] free to pursue' their legitimate interests in regulating the health and safety risks posed by the alcohol trade" (*Tennessee Wine*, 139 S. Ct. at 2472 (internal citations omitted)), because "§ 2 was adopted to give each State the authority to address alcohol-related public health and safety issues in accordance with the preferences of its citizens" (*id.* at 2474).

### A.  The Challenged Provisions

Pursuant to the power granted by § 2 of the Twenty-first Amendment, Rhode Island, like most other states, has adopted a three-tier system for the distribution and sale of alcohol.  The United States Supreme Court has recognized that the three-tier system is "'unquestionably legitimate.'"  *Granholm v. Heald*, 544 U.S. 460, 489 (2005) (quoting *North Dakota v. U.S.*, 495 U.S. 423, 432 (1990)); *see also Granholm*, 544 U.S. at 489 (quoting *North Dakota*, 495 U.S. at 447 (Scalia, J.

---

[2]  Section 2 of the Twenty-first Amendment states: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

concurring) ("The Twenty-first Amendment empowers [the State] to require that all liquor sold for use in the State be purchased from a licensed in-state wholesaler.").

Under Rhode Island's three-tier statutory scheme, Rhode Island licensed retailers must purchase alcohol products (including wine) from Rhode Island licensed wholesalers, who in turn must purchase from Rhode Island licensed suppliers. R.I. Gen. Law § 3-7-18.[3]  Licensed in-state retailers may sell and deliver to Rhode Island consumers the alcohol products purchased from the licensed in-state wholesalers. R.I. Gen. Law §§ 3-7-1, 3-7-3.  While in-state retailers may deliver wine purchased from in-state wholesalers to customers in Rhode Island, those deliveries must be completed by an employee and/or owner of the licensed Rhode Island retailer using its own vehicles – not by a common carrier. 230 R.I. Admin. Code 30-10-1.4.10 ("Rule 10").

Rhode Island does not have any residency requirement to obtain a retailer license, but all licensed retailers must be physically present in the State. R.I. Gen. Law § 3-5-10 (retailer license may be issued to residents of Rhode Island and corporations incorporated in another state and authorized to do business in Rhode Island); 230 R.I. Admin. Code 30-10.1.4.27 (retail license must identify a premises for operation under the license).

---

[3] A copy of each of the relevant Rhode Island statutes and regulations is included in the Addendum of this brief.

Likewise, all licensed wholesalers must be physically present in the State. R.I. Gen. Law §§ 3-6-9 and 3-6-10 (wholesalers license authorizes holder to sell at wholesale at the place described in the license within the State).

Because Rhode Island makes it unlawful for anyone in the business of selling alcohol products (including wine) in another state to ship any alcohol product directly to anyone other than a licensed Rhode Island wholesaler (R.I. Gen. Law § 3-4-8(a)), Plaintiffs challenge the residency requirement and the in-state wholesaler purchase requirement, claiming the requirements violate the dormant Commerce Clause, U.S. Const., art. I, § 8, cl. 3.

## B. Procedural Background

Plaintiffs-Appellants Kambis Anvar and Michelle Drum, Rhode Island residents and wine consumers who wish to order wine online from out-of-state retailers and have it delivered to them in Rhode Island by common carrier, filed their Complaint in October 2019 with respect to the challenged laws.[4]

After fact and expert discovery, Plaintiffs, Defendants Elizabeth K. Dwyer and Peter F. Neronha (together, the "State Defendants"), and Defendant RIRBAC each moved for summary judgment. During oral argument, Plaintiffs waived their

---

[4] Defendant-Appellant RIRBAC intervened in this case by order dated January 13, 2020.

claim concerning the constitutionality of the "personal transportation limit" because of a lack of standing (Appx. 461-462).

### C. The District Court's Decision

In its memorandum and order entered September 29, 2022 (Appellants' Br., Addendum B ("Addendum B")), the District Court found that the challenged laws and regulations do not violate the dormant Commerce Clause, are constitutional, and are a permissible exercise of Rhode Island's Twenty-first Amendment authority. It therefore denied Plaintiffs-Appellants' motion for summary judgment and granted Defendants-Appellees' motions for summary judgment (*id.* at 52). The District Court held as follows:

1. Because this case involves a dormant Commerce Clause challenge to alcohol regulations, the "different inquiry" test set out in *Tennessee Wine* applies (*id.* at 49).

2. Rhode Island's requirement of an in-state presence for retailers promotes the health and safety of Rhode Islanders as shown by concrete evidence regarding on-site inspections and license revocation that "allows the state to regulate alcohol to prohibit threats to Rhode Islanders' public health and safety as the State finds appropriate." (*Id*. at 51; *see also id*. at n. 6 (the State Defendants' Affidavit of John Mancone [Appx. 284-288] provides

"a credible factual recitation of the positive public health and safety impact from Rhode Island's current three-tiered system of alcohol regulation").

3. Rhode Island's requirement that retailers buy alcohol only from in-state licensed wholesalers also serves the public's health and safety as shown by concrete evidence of the multitude of on-site inspections to which the wholesalers are subject. *Id.*

4. Because Plaintiffs challenge "the very basis of Rhode Island's three-tier alcohol regulations system" – Rhode Island's in-state retailer presence requirement, in-state wholesaler purchase requirement, and the prohibition on common carrier delivery (*id.* at 50), provisions that are "essential features" of Rhode Island's three-tier system (*id*. at 51) – and because striking those essential features would "dismantle this system" which is "'unquestionably legitimate'" (*id.* at 50), the District Court could not find that the challenged provisions and Rhode Island's three-tier system violate the dormant Commerce Clause (*id.* at 50).[5]

---

[5] The District Court also held that the prohibition against a retailer using a common carrier to deliver wine was not discriminatory under the dormant Commerce Clause because it applied equally to in-state and out-of-state retailers (*id.* at 51-52). While Plaintiffs-Appellants argue that the District Court erred in failing to decide whether the common carrier prohibition discriminated in effect, such a determination is unnecessary given that the District Court upheld the common carrier provision on the grounds that it was an "essential feature" of Rhode Island's "'unquestionably legitimate'" three-tier system. *See Najas Realty, LLC v. Seekonk Water Dist.*, 821 F.3d 134, 145 n.15 (1st Cir. 2016) (Court need not address contention where other

## SUMMARY OF ARGUMENT

This appeal turns on a single issue: Do the challenged provisions – Rhode Island's retailer presence requirement and in-state wholesaler purchase requirement – satisfy *Tennessee Wine*'s different inquiry test? If they do, as the District Court concluded, the judgment must be affirmed.

The District Court correctly held that the applicable standard for assessing a dormant Commerce Clause challenge to an alcohol-related regulation was the "different inquiry" set forth in *Tennessee Wine* under which the States must establish that "the challenged requirement can be justified as a public health or safety measure" and do so through "'concrete evidence'" that the challenged law "actually promotes public health or safety." *Tennessee Wine*, 139 S. Ct. at 2474 (quoting *Granholm v. Heald,* 544 U.S. 460, 492 (2005)).  (Point I.)

The District Court correctly held that the challenged retailer presence requirement meets *Tennessee Wine*'s test because its predominant effect is the protection of Rhode Islanders' health and safety that would otherwise be at risk were the presence requirement eliminated.  Additionally, in accordance with *Tennessee Wine*, Defendants-Appellees provided concrete evidence that the retailer presence

---

determinations render decision unnecessary); *Fire & Police Pension Ass'n of Colorado v. Abiomed, Inc*., 778 F.3d 228, 246 (1st Cir. 2015) (holding Court of Appeals need not address argument where claim otherwise failed). Further, this Court can affirm the District Court's conclusion on the alternative grounds that the common carrier prohibition does not discriminate in effect.  *See* Point IV.

requirement promotes public health and safety, including through the affidavit of the State's Chief Public Protection Inspector.  (Point II.A.)

The District Court also correctly held that the challenged in-state wholesaler purchase requirement meets the predominate effect and concrete evidence prongs of *Tennessee Wine*'s test as reflected in the State's affidavit as well as the affidavits of two licensed Rhode Island wholesalers explaining the numerous and various on-site inspections to which they are subject and the critical function of the in-state wholesaler and in-state retailer in addressing issues of unsafe alcohol products (including wine) in a time-sensitive manner to protect the health and safety of Rhode Island consumers.  (Point II.B.)

This Court should affirm the District Court's judgment upholding the retailer presence and in-state wholesaler purchase requirements on the alternative grounds that, even if (as Appellants argue) those challenged laws do not promote Rhode Islanders' health and safety because out-of-state retailer direct shipping and delivery "pose no risk in the first place" (which is not so), Appellants' proposed nondiscriminatory alternative – compelling Rhode Island to adopt a permit system like that used by other States concerning out-of-state winery direct shipping – is not reasonable, particularly where Rhode Island has never allowed out-of-state wine sellers to direct ship or deliver wine purchased online.  (Point II.C.)

This Court should also affirm the District Court's judgment on the grounds that the retailer presence and in-state wholesaler purchase requirements as well as the common carrier delivery prohibition are "essential features" of Rhode Island's three-tier system that must be maintained to enable the State to preserve the integrity of its "'unquestionably legitimate'" three-tier system of alcohol regulation.  (Point III.)

The Court should affirm the District Court's judgment upholding the common carrier delivery prohibition on the alternative grounds that the prohibition (which applies to both in-state and out-of-state retailers) does not unconstitutionally discriminate in effect against out-of-state retailers even though use of common carriers may be the "only feasible" way out-of-state retailers can deliver wine to Rhode Island consumers.  (Point IV.)

Given Plaintiffs-Appellants' express waiver of their claim concerning the so-called "personal transportation limit" because of an admitted lack of evidence concerning standing, this Court should not consider that issue.  (Point V.)

## ARGUMENT

## I. LEGAL FRAMEWORK FOR ASSESSING A COMMERCE CLAUSE CHALLENGE TO AN ALCOHOL REGULATION

In *Tennessee Wine*, the Supreme Court initially reviewed the "long and complicated history" of the dormant Commerce Clause (139 S. Ct. at 2459-2462), "the history of federal-state alcohol regulatory authority that prevailed prior to the

adoption of the Eighteenth Amendment" (*id.* at 2461-2467), and the interplay of the dormant Commerce Clause and § 2 of the Twenty-First Amendment, focusing on its then most recent case, *Granholm* (*id.* at 2467-2473).

The Supreme Court then "appl[ied] the § 2 analysis dictated by the provision's history and our precedents," finding:

> [B]ecause of § 2, we engage in a different inquiry. Recognizing that § 2 was adopted to give each State the authority to address alcohol-related public health and safety issues in accordance with the preferences of its citizens, we ask whether the challenged requirement can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground. Section 2 gives the States regulatory authority that they would not otherwise enjoy, but as we pointed out in *Granholm*, "mere speculation" or "unsupported assertions" are insufficient to sustain a law that would otherwise violate the Commerce Clause. 544 U.S. at 490, 492, 125 S. Ct. 1885. Where the predominant effect of a law is protectionism, not the protection of public health or safety, it is not shielded by § 2.

*Id.* at 2474. The "different inquiry" requires states to show that "the predominant effect of a law" is the protection of public health and safety (or some other legitimate state interests) – not protectionism (*id.* at 2474), and to proffer "'concrete evidence'" – not "'mere speculation' or 'unsupported assertions'" that the challenged law "actually promotes public health or safety" (*id.* (quoting *Granholm*, 544 U.S. at 490)).

Just as the Supreme Court in *Tennessee Wine* based its articulation of the different inquiry on the principles set out in *Granholm*, so too did this Court apply *Granholm*'s analytical approach in determining that Massachusetts did not carry its

burden of showing through concrete evidence that the challenged alcohol regulation at issue in *Family Winemakers of California v. Jenkins*, 592 F.3d 1, 17 (1st Cir. 2010) served a legitimate nonprotectionist purpose.[6]

Courts in multiple jurisdictions that have assessed a dormant Commerce Clause challenge to an alcohol-related regulation since the *Tennessee Wine* decision in 2019 have applied the "different inquiry" standard. *See Lebamoff Enterprises Inc. v. Whitmer*, 956 F.3d 863, 869 (6th Cir. 2020), *cert. denied*, ___ U.S. ___, 141 S. Ct. 1049 (2021) ("When faced with a dormant Commerce Clause challenge to an alcohol regulation, as a result [of § 2], we apply a 'different' test. Rather than skeptical review, we ask whether the law 'can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground." (internal citations omitted); affirming denial of plaintiffs' summary judgment motion and grant of defendants' summary judgment motion regarding retailer presence requirement and prohibition

---

[6] As the District Court noted in its decision, Plaintiffs-Appellants argued below "that the more rigorous 'searching scrutiny' standard applies" (Addendum B at 49 n.5). Apparently because the District Court rejected Plaintiffs' proffered standard in favor of the *Tennessee Wine* different inquiry test (*id.*), Plaintiffs-Appellants argue on appeal that "intermediate scrutiny" rather than the *Tennessee Wine* different inquiry is the standard, citing *Clark v. Jeter*, 486 U.S. 456, 461 (1988) and *Wygant v. Jackson Bd. of Ed.*, 476 U.S. 267, 280 n.7 (1986) for the proposition. (Appellants' Br. at 14-16.) Plaintiffs-Appellants are incorrect as shown by, among other things, the two cases they cite in support. Neither is a dormant Commerce Clause case or has anything to do with alcohol regulation or the Twenty-first Amendment. Both cases are Equal Protection Clause cases that predate *Granholm* and *Tennessee Wine* and therefore are not relevant here.

of out-of-state retailer delivery); *B-21 Wines*, *Inc. v. Bauer*, 36 F. 4th 214, 222 (4th Cir. 2022), *cert. denied,* ___ U.S. ___,143 S. Ct. 567 (2023) (under *Tennessee Wine*, the court must assess "'whether the challenged [regime] can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground'" (internal citations omitted); affirming denial of plaintiffs' summary judgment motion and grant of defendants' summary judgment motion regarding prohibition on out-of-state retailer direct shipping); *Chicago Wine Co. v. Holcomb*, 532 F. Supp. 3d 702, 713 (S.D. Ind. 2021) (citing *Tennessee Wine*'s different inquiry test and denying plaintiffs' summary judgment motion and granting defendants' summary judgment motion regarding retailer presence requirement and in-state wholesaler purchase requirement); *Tannins of Indianapolis v. Cameron*, No. 3:19-CV-504-DJH-CHL, 2021 WL 6126063, at *3-4 (W.D. Ky. Dec. 28, 2021) (following *Lebamoff* and dismissing complaint); *Block v. Canepa*, No. 20-3686, 2022 WL 4133221 (S.D. Ohio Sept. 12, 2022) (following *Lebamoff*, applying *Tennessee Wine*'s different inquiry test, and denying plaintiffs' summary judgment motion and granting defendants' summary judgment motion regarding retailer presence and in-state wholesaler purchase requirements).

The District Court's ruling that "the 'different inquiry' test set out in *Tennessee Wine & Spirits* applies here" (Addendum B at 49, n.5) is therefore correct and should be affirmed.

II. **THE DISTRICT COURT CORRECTLY CONCLUDED THAT THE CHALLENGED LAWS ARE CONSTITUTIONAL UNDER TENNESSEE WINE'S DIFFERENT INQUIRY TEST**

The District Court correctly held that the challenged Rhode Island alcohol laws "withstand the different inquiry standard" (Addendum B at 50), "do not violate the dormant Commerce Clause[,] and are constitutional" (*id.* at 52).

Initially, to the extent that Plaintiffs-Appellants argue that the challenged laws discriminate against out-of-state retailers because in-state consumers have fewer wines available to purchase and at higher prices (Appellants' Brief at 19-20), that argument is unsupported factually and legally. The two grievances of discrimination are – (i) unable to buy a wine from an out-of-state retailer, a Rhode Island consumer will "substitute" a wine from an in-state retailer (*id.* at 8), and (ii) a Rhode Island consumer would be able to buy wines at better prices from an out-of-state retailer than from a local retailer (*id.* at 7, 9). Neither of these purported discriminatory effects is set forth in the Complaint; both are "supported" by the Declaration of Michele Drum, one of the two Plaintiffs-Appellants (Appx. 32-34).

But Plaintiff Drum's Declaration (prepared specifically for the summary judgment motion) is contrary to her deposition testimony and therefore improper. *See, e.g.,* Drum Dep. Tr. at 19:24-20:3; Appx. 404-405 (there has been no specific wine that she was looking for that she could not find at a local Rhode Island liquor store); 20:4-19; Appx. 405 (Vickers, a local liquor store with a "wide selection of

14

wines," "responded by bringing in a few more [Barolo] options," and she "was just pleasantly surprised"); 17:7-18:7; Appx. 402-403 (Drum found a "remarkably cheap" Barolo, "a nondenominational," at a local liquor store and purchased it – "Indeed, I did" want to purchase it.); 29:15-30:3; Appx. 406-407 ("there's really no price differential on the wine you can get here and that you can get online" from an out-of-state retailer).

Drum's assertions in her Declaration of having to substitute a lesser wine locally or having to pay higher prices locally contradict her deposition testimony and appear to be the work of Plaintiffs' counsel trying to manufacture undisputed facts in an effort to win summary judgment – an improper use of a plaintiff's declaration. *Escribano-Reyes v. Prof'l Hepa Certificate Corp*., 817 F.3d 380, 386 (1st Cir. 2016) ("[W]here a party has given 'clear answers to unambiguous questions' in discovery, that party cannot 'create a conflict and resist summary judgment with an affidavit that is clearly contradictory,' unless there is a 'satisfactory explanation of why the testimony [has] changed.'") (alterations in original); *Pena v. Honeywell Int'l Inc.*, No. CV 15-179 WES, 2018 WL 582579, at *2 (D.R.I. Jan. 29, 2018), *aff'd,* 923 F.3d 18 (1st Cir. 2019) ("a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn

deposition) without explaining the contradiction or attempting to resolve the disparity.")[7]

Further, the unrefuted record evidence concerning the unavailability issue shows that Rhode Island wholesalers can fulfill the requests of all their Rhode Island retailer customers for wines – including those that are not currently on the retailer's or wholesaler's shelves. *See* Mancini Decl. ¶ 14; Appx. 444-445; Epstein Decl. ¶ 8; Appx. 449.

Regardless, other courts that have grappled with this issue have held that no Commerce Clause violation exists under comparable circumstances. *See Sarasota Wine Mkt., LLC v. Schmitt*, 987 F.3d 1171, 1178-84 (8th Cir.), *cert. denied*, ___ U.S. ___, 142 S. Ct. 335 (2021) (holding consumers who alleged that direct shipment prohibition prevented them from purchasing wines not available in Missouri had standing, but ultimately rejecting Commerce Clause challenge); *Lebamoff Enterprises Inc. v. Whitmer*, 956 F.3d at 874-75 ("What of the consumer plaintiffs, the Michigan wine purchasers who cannot buy the types of wine they want without inconvenience? The record for one suggests these concerns may be exaggerated.

---

[7] Nor does the Declaration of Plaintiff Kambis Anvar (Appx. 30-31), which was likewise prepared for summary judgment, provide admissible support for the purported discriminatory effect concerning selection and pricing. *See, e.g.,* Anvar Dep. Tr. at 15:4-7; Appx. 429 (never a time when he could not find a specific wine at the local liquor store).

Wine wholesalers have their own profit incentive to carry enough brands to meet consumer demand and answer requests for more.").

In *Lebamoff*, the Sixth Circuit Court of Appeals acknowledged that some brands of wine may be unavailable to consumers in Michigan. *Lebamoff*, 956 F.3d at 875. But it explained that "the extent of the State's responsibility for that gap is not clear. Some winemakers may seek higher margins by selling exclusively at 'high-end' restaurants or at their own vineyards, and others may lack the capacity to produce enough wine for wide distribution. . . . As Lebamoff's expert admits,[8] fewer than 50,000 of the roughly 200,000 wines sold in the country are available nationwide. That's not Michigan's fault." *Id.*

The Sixth Circuit further held:

> [I]t's likely the case that some wine producers do not sell to Michigan wholesalers due to these regulatory costs. Some rare wines, for example, apparently are available only through specialty retailers located primarily in California, New York, New Jersey, and Chicago. But some reduction in consumer choice, it seems to us, flows ineluctably from a three-tier system. The purpose of the system, for better or worse, is to make it harder to sell alcohol by requiring it to pass through regulated in-state wholesalers. Those middlemen unsurprisingly impose added costs, sometimes choice-limiting costs. Still, it's worth noting that Michigan has loosened some regulations to increase choice. That was the point of allowing limited direct deliveries by out-of-state wine producers. Perhaps more amendments are in order. Broadening product options seems far afield from the tied-saloon system that the three-tier system was designed to replace. The internet

---

[8] Lebamoff's expert was Mr. Wark, who is also Plaintiffs-Appellants' expert. *See* Wark Dep. Tr. 7:7-13; Appx. 299.

has widened that gap. Today '[w]e live in a global economy and we shop in virtual marketplaces for everything from luxuries to necessities.' But the Twenty-first Amendment leaves these considerations to the people of Michigan, not to federal judges.

*Id.* at 875. The Twenty-first Amendment certainly does not leave the considerations discussed in *Lebamoff* to Plaintiffs-Appellants, especially where the Rhode Island Legislature has determined not to "loosen[ ] some restrictions" and does not even allow out-of-state winery direct shipment and delivery of online orders.

### A. Concrete Evidence In The Record Shows The Retailer Presence Requirement Promotes Rhode Islanders' Health and Safety

It is *Tennessee Wine*'s adoption of *Granholm*'s governing principles that provides express guidance for the assessment of Rhode Island's retailer presence requirement. After setting out its "predominant effect" test ("whether the challenged requirement can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground"), the Supreme Court in *Tennessee Wine* acknowledged that retailers are presumptively present in the state. In discussing reasonable alternatives to a durational residency requirement, the Supreme Court distinguished between presence and residence, emphasizing that Tennessee retailers were already physically located in the state, which was sufficient for the state to maintain oversight such that residency was unnecessary:

> In this case, the argument [in support of residency] is even less persuasive since the stores at issue are physically located within the State. For that reason, the State can monitor the stores' operations through on-site inspections, audits, and the like . . . Should the State

conclude that a retailer has 'fail[ed] to comply with the state law,' it may revoke its operating license. *Granholm*, 544 U.S. at 490, 125 S. Ct. 1885. This 'provides strong incentives not to sell alcohol' in a way that threatens public health or safety. *Ibid*.

139 S. Ct. at 2475.[9]

Rhode Island's retailer presence requirement functions to enable the State to "monitor the [retailer] stores' operations through on-site inspections, audits, and the like" and thereby protect Rhode Island's citizens from the retailers' "'fail[ure] to comply with the state law'" by selling alcohol products "in a way that threatens public health or safety." *Tennessee Wine*, 139 S. Ct. at 2475 (quoting *Granholm*, 544 U.S. at 490).

The District Court correctly relied upon the Supreme Court's observations concerning the public health and safety benefits of a physical presence requirement (Addendum B at 51) when assessing Rhode Island's presence requirement. The District Court also correctly noted the evidence in the record demonstrating the attributes of the challenged statute within Rhode Island's three-tier system. Specifically, and as the District Court noted, the Affidavit of John Mancone, the State Defendants' Chief Public Protection Inspector (Appx. at 285-288), provides "a credible factual recitation of the positive public health and safety impact from Rhode

---

[9] Plaintiffs-Appellants wrongly state: "The Supreme Court has held that it is unconstitutional to require residency *or physical presence* as a precondition to doing business." (Appellants' Br. at 37.) Neither *Granholm* nor *Tennessee Wine* so held.

Island's current three-tiered system of alcohol regulation" (Addendum B at 51 n.6). The Mancone Affidavit and other evidence in the record (discussed below) concerning the State's monitoring of retailers' operations through on-site inspections and audits and the necessary role of local law enforcement in that monitoring function provide the requisite concrete evidence.

Under Rhode Island's alcohol statutes and regulations (the "RI ABC Law"), retail licensees are required to maintain and have available for inspection on their licensed premises all purchase and sale records.  (Mancone Aff. ¶ 18; Appx. 286.) The various municipalities in the State are responsible for issuing Class A retail licenses and undertaking their own enforcement measures.  (*Id.* at ¶ 20; Appx. 287; *see also* Erickson Report (Exhibits List, Ex. A) at ¶¶ 4-5, 7; Appx. 157-173 (noting the benefits of the three-tier system, the rationale for state and local control over retailing alcohol products within a three-tier system, and the credible research confirming the efficacy of local measures).)

The RI ABC Law also "deputizes" the Division of Sheriffs, the Rhode Island State Police, and local law enforcement to enforce the State's statutes and regulations concerning alcoholic beverages within their respective jurisdictions. (Mancone Aff. ¶ 21; Appx. 287; *see also* R.I. Gen. Laws 3-12-1.)

The RI ABC Law also authorizes the use of "compliance checks" in which underage individuals working with the Department of Business Regulation ("DBR")

or a municipal police department are sent into a Class A retailers' licensed premises to see if the minor is able to purchase alcohol.  (*Id.* at ¶ 22; Appx. 287.)

As noted above, the enforcement activities of DBR are assisted by Rhode Island law enforcement officers.  (Mancone Aff. ¶ 21; Appx. 287.)  That is a common means by which DBR fulfills its public health and safety functions.  This assistance in enforcement duties would not be available from officers in another state.  Further, since local Rhode Island law enforcement officers would have no jurisdiction to act in another state, this critical means of enforcement would be lost if retailers (and wholesalers) are not required to be physically present in the State.

Out-of-state online retailers pose additional regulatory challenges because DBR, municipalities, and local law enforcement cannot conduct in-person, on-site inspections or confirm that the products for sale have passed through a licensed in-state wholesaler or that the sellers have complied with State tax laws.  (*Id.* at ¶ 30; Appx. 287; *see also* Maroney Report (Exhibits List, Ex. DD) at pp. 20-22; Appx. 254-283.)  These out-of-state online retailers also pose additional safety concerns because neither DBR nor law enforcement can verify that the product offered for sale is what it purports to be, that the product is being sold to someone at least 21 years old, or even that the product is fit for human consumption.  (Mancone Aff. at ¶ 31; Appx. 288; s*ee also* Erickson Report at ¶¶ 7-9; Appx. 161-162; Maroney Report at pp. 10-15; Appx. 263-268.)

The threat of suspension or revocation of a Rhode Island retailer's license is a significant deterrent because the Rhode Island licensed retailer knows that if it loses its license, it will effectively be out of business.   There is no analogous deterrent to an out-of-state retailer.   The Supreme Court in *Tennessee Wine* recognized this deterrent effect regarding in-state retailers:

> Should the State conclude that a retailer has "fail[ed] to comply with state law," it may revoke its operating license. *Granholm*, 544 U. S., at 490.  This "provides strong incentives not to sell alcohol" in a way that threatens public health or safety. *Ibid*.

139 S. Ct. at 2475.  To the extent an out-of-state retailer held a direct shipment permit, the threat of suspension or revocation of that permit would be a much less significant incentive to a licensee whose business does not depend on selling to Rhode Island consumers where DBR had no authority to revoke the out-of-state retailers' *home state license*.  (Erickson Report at ¶ 8; Appx. 161; Maroney Report at pp. 16-18; Appx. 269-272.)  Nor would DBR have any authority to stop the out-of-state wholesalers from selling product to the non-compliant out-of-state retailer – but DBR is able to do so with respect to its in-state wholesalers and retailers, again because of the presence requirement.  (*Id.*)

## B.  Concrete Evidence In The Record Shows The In-State Wholesaler Purchase Requirement Promotes Rhode Islanders' Health and Safety

The physical presence of the licensed Rhode Island wholesaler, which is the predicate for the in-state wholesaler purchase requirement, also has the effect of

protecting Rhode Islanders' health and safety because – as it does with Rhode Island retailers – the State monitors wholesalers' operations through several on-site inspections and audits. The licensed Rhode Island wholesaler is subject to various inspections of its licensed premises – all of which are on-site, physical inspections. (Mancini Decl. ¶ 9; Appx. 442; Horizon Decl. ¶ 3; Appx. 446-447.) Initially, before a wholesaler license is issued, the premises to be licensed must undergo and pass an inspection by DBR. (*Id.*) The local fire safety agency also conducts an on-site inspection of the licensed premises. (*Id.*) As a condition of its license, the Rhode Island wholesaler must make its premises (including its books and records) available for inspection by DBR. (*Id.*) The wholesalers undergo an annual on-site inspection and audit of their total State tax filings, including alcohol-related excise tax and container tax filings. (*Id.*) And if a Rhode Island wholesaler refuses to provide DBR or other enforcement officials with access to its licensed premises, that refusal is grounds for suspension or revocation of the wholesaler's license. (*Id.*)

Because licensed Rhode Island wholesalers may purchase only those alcohol products from the designated brand owner that are registered with DBR, and because those purchased products must be stored in the wholesaler's licensed warehouse prior to resale to a licensed Rhode Island retailer, if a product is determined to be defective, the supplier-manufacturer can be tracked through a particular wholesaler, and the defective product recalled. (Mancini Decl. ¶ 10; Appx. 443; Epstein Decl.

23

¶ 4; Appx. 447.) This allows the licensed Rhode Island wholesaler, upon receipt of notice concerning a defective product, to act expeditiously (i) to locate all quantities in its possession of the defective product and remove it from distribution until it is either approved for sale or required to be returned to the supplier, and (ii) if necessary, to recover the defective product from the retailers to whom it was sold. (*Id.*)

In their declarations, the wholesalers describe several recall problems (including those involving wine) that they addressed efficiently. (Mancini Decl. ¶ 11; Appx. 443-444; Epstein Decl. ¶ 5; Appx. 447-448.) The licensed Rhode Island wholesalers are able to effectuate a product recall quickly because of the detailed records that they must maintain regarding sales to each of the finite number of licensed Rhode Island retailers as well as the ongoing business relationship they have with each of those Rhode Island retailers. More importantly, because the licensed Rhode Island wholesalers have boots on the ground and feet on the street, they are able to mobilize effectively and then seamlessly retrieve defective product from each retailer in the State before a consumer is injured by or falls ill from that recalled product. (Mancini Decl. ¶ 12; Appx. 444; Epstein Decl. ¶ 6; Appx. 448.) Should the magnitude of the recall problem trigger the involvement of the federal Alcohol and Tobacco Tax and Trade Bureau or DBR, these licensed Rhode Island wholesalers would fully comply with any necessary on-site measures (including

24

product seizure) consistent with the obligations under their federal basic permit.[10] They would also cooperate with DBR to ensure that all recalled product that was already shipped to retailers was identified, located and, if necessary, removed from the retailers' shelves – again, consistent with their obligations under their Rhode Island license.  (Mancini Decl. ¶ 13; Appx. 444; Epstein Decl. ¶ 7; Appx. 448-449.)

The record is replete with concrete evidence to establish that the retailer presence and in-state wholesaler purchase requirements promote the health and safety of Rhode Islanders, particularly where that concrete evidence pertains to the very attributes of a presence requirement that the Supreme Court in *Tennessee Wine* recognized – i.e., enabling the State to "monitor the stores' operations through on-site inspections, audits, and the like" (139 S. Ct. at 2475) and, upon finding a "'fail[ure] to comply with state law,'" revoking the operating license (*id.* (quoting *Granholm*, 544 U.S. at 490)).

---

[10] While retailers are licensed and regulated by the individual States only, wine wholesalers are required to obtain a federal permit in addition to the requisite license from the States and to comply with federal and state laws.  *See* Federal Alcohol Administration Act of 1935, 27 U.S.C. §§ 201, et seq. ("FAA Act").

### C. This Court Should Affirm The District Court's Judgment On The Alternative Grounds[11] That Plaintiffs-Appellants' Proposed Nondiscriminatory Alternative – Compelling Rhode Island To Adopt A Permitting System Like That Other States Have For Out-of-State Winery Direct Shipping – Is Not Reasonable

Based on their contention that out-of-state winery direct shipping and out-of-state retail direct shipping "pose no risk" to Rhode Islanders' health and safety "in the first place" (Appellants' Br. at 21), Appellants argue that the "reasonable nondiscriminatory alternative" to the retailer presence and in-state wholesaler purchase requirements is to allow out-of-state retail direct shipping and delivery under the same permit system some other States use for out-of-state winery direct shipping and delivery (*id.* at 27). Appellants are wrong on both counts. Their evidentiary support for their "pose no threat to begin with" predicate (*id.* at 22-25) is woefully insufficient; and the "reasonable alternative" (*id.* at 27-28) is not reasonable given that (i) Rhode Island has no existing system for out-of-state winery direct shipping and delivery, (ii) the existing licensing system for in-state retailers to which Appellants also point is predicated on physical presence in the State (and therefore provides no basis as an "alternative"), and (iii) there are many significant differences between winery and retailer direct shipping.

---

[11] This Court may affirm a district court's decision on any ground which is supported by the record. *LimoLiner, Inc. v. Dattco, Inc.*, 919 F.3d 86, 90 (1st Cir. 2019); *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 34 (1st Cir. 2010) ("We may affirm the district court on any basis apparent in the record.").

i.     Unsupported "pose no threat" predicate

The evidence upon which Appellants rely in claiming that neither winery nor retail direct shipping poses any threat to public health and safety (i) is inadmissible or entitled to little, if any, weight, (ii) fails to support the point in question, and/or (iii) is not relevant.

For example, Appellants rely heavily on federal agency data as purported evidence that States allowing out-of-state retailer direct shipping and delivery report no "increased youth access" or shipment to minors, citing to the report of their proffered expert, Tom Wark (Report of Tom Wark ¶¶ 42-43; Appx. 49). Mr. Wark cites to the 2015 Substance Abuse and Mental Health Services Administration ("SAMHSA") National Survey on Drug Use and Health in his report. (Wark Report ¶ 43; Appx. 49.) But as the State Defendants' expert, Pamela Erickson, noted at page 7 of the Rebuttal Report for the New Jersey State defendants in that retailer direct shipping case (which Rebuttal Report was disclosed in Ms. Erickson's Expert Witness Report in this case (Appx. 171)) –

> In contrast to the outdated Substance Abuse and Mental Health Services Administration (SAMHSA) survey upon which Mr. Wark relies, SAMHSA's 2020 State Performance & Best Practices for the Prevention and Reduction of Underage Drinking Report states:

> "Retailer interstate shipments may be an important source of alcohol for underage people who drink. In a North Carolina study (Williams & Ribisl, 2012), a group of eight 18- to 20-year-old research assistants placed 100 orders for alcoholic beverages using Internet sites hosted by out-of-state retailers. Forty-five percent of the orders were

successfully completed, whereas 39 percent were rejected as a result of age verification. The remaining 16 percent of orders failed for reasons believed to be unrelated to age verification (e.g., technical and communication problems with vendors). Most vendors (59 percent) used weak, if any, age verification at the point of order, and, of the 45 successful orders, 23 (51 percent) had no age verification at all. Age verification at delivery was also inconsistently applied.

The North Carolina study reported that there are more than 5,000 Internet alcohol retailers, and that the retailers make conflicting claims regarding the legality of shipping alcohol across state lines to consumers. There were also conflicting claims regarding the role of common carriers. The North Carolina study reported that all deliveries were made by such companies, and many Internet alcohol retailers list well-known common carriers on their websites. Yet carriers contacted by the study researchers stated they do not deliver packages of alcohol except with direct shipping permits. This suggests confusion regarding state laws addressing interstate retail shipments. North Carolina prohibits such shipments, which means that at least 43 percent of the retailers in the study appeared to have violated the state law." *See* https://www.stopalcoholabuse.gov/media/ReportToCongress/2018/report_main/State_Performance_Best_Practices.pdf.[12]

(Erickson Rebuttal Report ¶ 7; Appx. 419.)

Other "data" upon which Plaintiffs-Appellants rely is combined with a "Summary" chart created by Plaintiffs-Appellants' counsel. *See* "NIH consumption data" and "Summary" chart (Appx. 131-135) and "NHTSA Traffic Safety Facts"

---

[12] The Williams and Ribisl study to which the SAMHSA 2020 Report refers is also referenced in the Maroney Report at page 13 (Appx. 266). Rebecca S. Williams and Kurt M. Ribisl, *Internet Alcohol Sales to Minors*, Arch Pediatric Adolescent Medicine 2012; 166(9): 808-813. While Plaintiffs-Appellants and their expert, Tom Wark, may have overlooked this study in erroneously claiming the lack of any study regarding retailer direct shipping to minors, the Defendants-Appellees' experts did not.

and two "Summary" charts (Appx. 94-102). These exhibits in the record should be given little, if any, weight because of the evidentiary issues impairing them. For example, Plaintiffs-Appellants' NHTSA exhibit (Appx. 94-102) consists of five different documents, including part of the National Highway Traffic Safety ("NHTS") Facts 2019 Data and part of the NHTS Facts 2016 Data, which are combined with two "Summary" charts (prepared by counsel) in a misguided attempt to show that "alcohol-related traffic fatalities" are not higher in States allowing retailer direct shipping. (Appellants' Br. at 22.) But the "Summary" is factually incorrect in designating Idaho and Nevada as allowing retailer direct shipping[13] and, in any event, makes no sense because some of the designated direct shipping States have fatality rates *higher* than the "U.S. Average" and the others have rates lower

---

[13] The "Summary" charts, the Wark Report (¶ 18; Appx. 44-45), and the chart in Plaintiffs' Exhibit 32 (Appx. 129-130) are all based on the erroneous assertion as to the number of States that allow retail direct shipping. Specifically, Nevada and Idaho do not allow it. The Nevada legislature's passage of Senate Bill 507 was effective July 1, 2021; Nevada thereby prohibited retailer direct shipment (https://www.leg.state.nv.us/App/NELIS/REL/81st2021/Bill/7922/Text). And the Idaho Alcohol Control Bureau's advisory clarifies that the amended reciprocity law (Idaho 23-1309A(7)) does *not* permit out-of-state retailers to direct ship to Idaho consumers (https://www.avalara.com/blog/en/north-america/2021/09/is-idaho-a-reciprocal-state-for-dtc-wine-shipping.html). Plaintiffs-Appellants' lax approach to this issue compounds their error and further undermines their position that because no problems exist in those States allowing retail direct shipping, Rhode Island should follow suit.

29

than the "U.S. Average" – which is the same for the States that do *not* allow retail direct shipping. This "Summary" (Appx. 98) is therefore entitled to no weight.[14]

Appellants also rely heavily on emails between their counsel and regulators from some of the States that allow retail direct shipping (Appx. 68-74) to support the supposed fact proffered by counsel that none of the States allowing direct shipping has "report[ed] any public health or safety problems" (Appellants' Br. at 22). Like the federal agency "data" and "Summary" charts, these emails should likewise be given little, if any, weight because none of the regulators indicated what, *if any*, investigation or enforcement measures had been undertaken regarding retail direct shippers' non-compliance. Further, (i) in the case of Connecticut, the regulator specifically caveated his response by noting that the first permit had been issued only five months earlier (Appx. 70); and (ii) Nebraska's regulator noted that "licensees do not report shipments to us" (Appx. 73), undermining Plaintiffs-Appellants' supposed "fact."

Finally, Appellants rely on a 2003 FTC report, *Possible Anticompetitive Barriers to E-Commerce: Wine* (Appx. 84-93), and a 2012 report by the Maryland

---

[14] Plaintiffs use the same approach ("data" combined with a counsel-prepared "Summary" chart) on the issue of alcohol consumption (Appx. 131-135). This "Summary" chart is likewise entitled to no weight because it also is factually wrong as to the States allowing retail direct shipping and likewise proves nothing because of the States allowing direct shipping, some are above the "U.S. Average," while others are below – i.e., no different than those States *not* allowing direct shipping.

Comptroller, *Study on the Impact of Direct Wine Shipment* (Appx. 75-83), for the proposition that those States allowing direct shipping reported no related public health or safety problems and no problems with shipments to minors (Appellants' Br. at 22). Both reports have evidentiary infirmities. The FTC report (almost 20 years old) was based on a study of the winery direct shipping market in McLean, Virginia – not retailer direct shipping. Additionally, Appellants fail to note that the appendices to the FTC report undermine their purported undisputed fact: Appendix A makes clear that the study was limited to McLean, Virginia, and Appendix B contains the letters from state regulators (including the Hawaiian regulator who noted his concern about "recourse against out-of-state shippers of wine shipping wine illegally into my state or shipping wine to minors in my state" which "has the potential to become a major problem"). The Maryland Report was limited to Maryland consumers, licensed Maryland wholesalers, and out-of-state wineries holding a Maryland winery direct shippers permit – not out-of-state retailers. Rhode Island does not provide for an out-of-state winery direct shippers permit.

Plaintiffs-Appellants based their argument that the Rhode Island retailer presence and in-state wholesaler purchase requirements do not promote public health and safety on the proposition that there is no threat to Rhode Islander's health and safety posed by eliminating those laws and allowing out-of-state retailer direct

shipping and delivery. Because Plaintiffs-Appellants failed to establish that proposition, their argument predicated on it must fail.

### ii. No "reasonable alternative"

Even if Defendants-Appellees did not put forth sufficient concrete evidence that the predominate effect of the State's retailer presence and in-state wholesaler purchase requirements is the protection of public health and safety (Defendants-Appellees did), and even if Plaintiffs-Appellants did proffer admissible, reliable, and factually correct evidence that out-of-state retailer direct shipping and delivery "poses no threat" to public health and safety (Plaintiffs-Appellants did not), Plaintiffs-Appellants' position that the "reasonable alternative" to maintaining the State's retailer presence and in-state wholesaler purchase requirements – i.e., simply using the permit system for out-of-state winery direct shipments for out-of-state retailers – should be rejected.

Initially, Plaintiffs-Appellants contend that, because Rhode Island "already uses a permit system for home deliveries by in-state retailers," a permitting system for out-of-state retailers "would work" as a "reasonable nondiscriminatory alternative" (Appellants' Br. at 27). Plaintiffs-Appellants' top-sided tautology ignores the very constitutional question at issue on this appeal – i.e., the limited

delivery privilege of licensed in-state Rhode Island retailers (delivery using their own employees and vehicles) is conditioned on the retailers' presence in the State.[15]

Plaintiffs-Appellants also point to the States that allow out-of-state winery direct shipping, arguing that Rhode Island must adopt such a licensing system for use with out-of-state retailer direct shipping and delivery because "it works everywhere else" (Appellants' Br. 27-28).[16] Plaintiffs-Appellants argue that direct shipment to Rhode Island residents by out-of-state sellers cannot be a problem because Rhode Island already allows out-of-state wineries to direct ship (Appellants' Br. 25), and home delivery from an out-of-state seller cannot be a problem because Rhode Island already allows out-of-state wineries to make home deliveries (*id.* at

---

[15] Plaintiffs-Appellants' claim that "Rhode Island already uses a permit system for . . . online orders by third-party servicers" like Drizly (Appellants' Br. at 27-28, citing to https://dbr.ri.gov.real-estate-and-commercial-licensing/liquor) is incorrect and, in any event, irrelevant. Rhode Island does not require a permit for third-party servicers like Drizly that do not sell or deliver any alcohol product. The licensed Rhode Island retailer has the responsibility of delivering the alcohol products ordered via the Drizly website or smartphone application – and must do so in accordance with Rhode Island law that requires the Rhode Island retailer to deliver using its own employees and vehicles. Rhode Island's licensed in-state retailers – not Drizly or any other third-party servicer doing business in Rhode Island – must deliver the alcohol products.

[16] Equally erroneous was Plaintiffs-Appellants' position below that "Rhode Island already uses a permit system . . . for direct shipments by out-of-state wineries" (Plaintiffs' Memorandum In Support of Motion For Summary Judgment at 19 (ECF Doc 58-1 filed 1/14/22)). Rhode Island has no such permit system. Apparently acknowledging their error, Plaintiffs-Appellants have abandoned that argument on appeal.

23). But Rhode Island has never allowed out-of-state winery direct shipment of online orders; nor has it ever allowed out-of-state wineries to make "home delivery" of wine ordered online. It is only where a Rhode Island resident (i) travels to the out-of-state winery, (ii) purchases wine at the winery's premises through an in-person transaction, and (iii) while at the winery's premises, arranges for the wine to be shipped back to the consumer at the Rhode Island home address, that the out-of-state winery may use a common carrier to ship the wine purchased at the out-of-state winery to the Rhode Island consumer. *See* R.I. Gen. L. § 3-4-8.

Plaintiffs-Appellants' argument ignores that critical in-person prerequisite. Their argument also conflates "direct shipment" using common carrier and "home delivery"; the licensed Rhode Island retailers cannot use a common carrier, but they can make home deliveries using their own vehicles.  Plaintiffs-Appellants cherry pick regulatory entitlements on behalf of the out-of-state retailers to concoct their so-called "reasonable alternative": (i) they want the out-of-state retailers to be able to direct ship using a common carrier like out-of-state wineries under § 3-4-8 (but without the prerequisite under § 3-4-8 that the wine be purchased at the out-of-state retailers' premises);[17] (ii) they want the out-of-state retailers to be able to make home

---

[17] In *Cherry Hill Vineyard, LLC v. Baldacci*, 505 F.3d 28, 36 (1st Cir. 2007), this Court upheld Maine's requirement that all wine purchases (whether from an in-state or out-of-state farm winery) be made face-to-face in an in-person transaction at the

deliveries like the in-state retailers under Rule 10 (but without the prerequisite that the out-of-state retailers use their own vehicles); and (iii) of course, they want the out-of-state retailers to be able to sell and deliver to a Rhode Island consumer the wines the out-of-state retailers carry (but without the prerequisite that the wine be purchased from a licensed in-state Rhode Island wholesaler under R.I. Gen. Law § 3-7-18).

The bottom line is this: The "reasonable alternative" that Plaintiffs-Appellants advocate on behalf of out-of-state retailers (i.e., out-of-state winery direct shipping of online orders) is one that Rhode Island has never allowed in the State. And Rhode Island has a litany of reasons for refusing to allow out-of-state winery direct shipping and delivery, let alone refusing to allow out-of-state *retailer* transactions, including the following:

- Unlike retailers, wineries are required to obtain a federal permit that could fall into jeopardy if they violate state law. There is no *federal* permit available to, or required of, alcohol retailers. Retailers are licensed and regulated by the individual States, under each State's own laws which reflect local needs, local history, and local views on how beer, wine and spirits should be distributed and sold. There is no federal retailer permit that can be revoked or suspended if a retailer fails to comply with Rhode Island law. In contrast, wineries *and wine wholesalers* are required to have a federal permit and to comply with federal and state laws. *See* FAA Act, 27 U.S.C. §§ 201, et seq. *See also* Bureau of Alcohol, Tobacco and Firearms ("ATF"), ATF Ruling 2000-1 (available at https://www.ttb.gov/rulings/2000-1.htm) which explains

---

winery survived the Commerce Clause challenge of the plaintiffs (who were represented by the same attorneys representing Plaintiffs-Appellants).

that "[r]etailers are not required to obtain basic permits under the FAA Act," and "while ATF is vested with authority to regulate interstate commerce in alcoholic beverages pursuant to the FAA Act, the extent of this authority does not extend to situations where an out-of-State retailer is making the shipment into the State of the consumer.").  The Alcohol and Tobacco Tax and Trade Bureau ("TTB"), the successor agency to ATF, confirms that ATF Ruling 2000-1 "remains in effect and reflects the policy of TTB today."

- Out-of-state retailers are required to follow the alcohol regulations of the State where they are located.  In many (if not most) instances, they are required to buy product from an in-state wholesaler – a regulatory requirement that has no relevance or application to wineries.

If Rhode Island has refused to allow out-of-state wineries to direct ship online orders, then it certainly should not be compelled to allow out-of-state retailers to do so.

Plaintiffs-Appellants' argument that allowing out-of-state retailer direct shipping and delivery will not adversely impact the ability of the State to enforce compliance with its regulatory scheme is likewise factually and legally unsupported. The idea that there will be no more than 500-800 retailers who will seek to deliver to Rhode Island consumers, as suggested by Plaintiffs-Appellants' proffered expert (Wark Report ¶ 50; Appx. 50), is speculative at best, and simply sketchy statistics at worst, since it is based on the number of retailers that took orders on a single web site, Winesearcher.com, and makes no effort to assess the number of out-of-state retailers who would engage in direct shipping if more States allow retail direct shipping such that the retailers will be shipping legally – other than to say there was "no question in [his] mind that [if] more states will allow out-of-state retailers to

36

ship into their state," that "will result in *far more wine being shipped across borders*." (Wark Dep. Tr. 115:2-116:6; Appx. 351-352 (emphasis added).)

Equally faulty is Plaintiffs-Appellants' argument that Rhode Island must allow out-of-state retail direct shipping because certain States purportedly allow it. The Supreme Court has consistently underscored that § 2 of the Twenty-first Amendment is predicated on the concept, recognized most recently in *Tennessee Wine*, that "each State [has] the authority to address alcohol-related public health and safety issues in accordance with the preferences of *its citizens*." 139 S. Ct. at 2474 (emphasis added). The Rhode Island Legislature's determination that a retailer presence requirement and in-state wholesaler purchase mandate fulfill the public policy of the State and the legislative purpose of the RI ABC Law – foremost of which is "the promotion of temperance and for the reasonable control of the traffic in alcoholic beverages" (R.I. Gen. Law § 3-1-5)[18] – is not to be second-guessed by how loosely some other State chooses to regulate the alcohol products in its State. *See also Lebamoff*, 956 F.3d at 875 ("The purpose of the [three-tier] system, for better or worse, is to make it harder to sell alcohol by requiring it to pass through regulated in-state wholesalers."; "the Twenty-first Amendment leaves these

---

[18] *See also* R.I. Gen. Law § 3-1-6 (RI ABC Law is to be construed "to limit rather than expand commerce in alcoholic beverages and to enhance strict regulatory control over . . . distribution and sale of alcoholic beverages through the three-tier regulatory system").

considerations [regarding loosening some regulations] to the people of Michigan, not to federal judges."); *accord Tennessee Wine*, 139 S. Ct. at 2484 (Gorsuch, J., dissenting) ("Under the terms of the compromise [those who adopted the Twenty-first Amendment] hammered out, the regulation of alcohol wasn't left to the imagination of a committee of nine sitting in Washington, D.C., but to the judgment of the people themselves and their local elected representatives.").

Rhode Island's stringent alcohol regulatory system, which does not even allow out-of-state winery direct shipping and delivery of online orders, properly prohibits out-of-state retailers who have no presence in the State and do not purchase their wine from in-state Rhode Island wholesalers from direct shipping and delivery to Rhode Island consumers.

## III. THE CHALLENGED REQUIREMENTS ARE CONSTITUTIONAL FOR ADDITIONAL REASONS THAT SUPPORT AFFIRMANCE

In addition to holding that the challenged laws "withstand the different inquiry standard" (Addendum B at 50), the District Court held that the retailer presence requirement "is an 'essential feature' of the state's three-tier system of alcohol regulation" (*id.* at 51) that does not violate the dormant Commerce Clause (*id.* at 50). The District Court pointed to the Supreme Court's decision in *North Dakota v. U.S.*, 495 U.S. 423, 433 (1990) for the proposition that "[w]hen a state 'has established a comprehensive system for the distribution of liquor within its borders[,] [t]hat system is unquestionably legitimate." In *Granholm*, the Supreme Court

reaffirmed that the three-tier system is "'unquestionably legitimate,'" *id*. at 489

(quoting *North Dakota*, 495 U.S. at 432), and cited to *North Dakota,* 495 U.S. at 447

(Scalia, J., concurring), for the principle that "[t]he Twenty-first Amendment

empowers [states] to require that all liquor sold for use in the State be purchased

from *a licensed in-state wholesaler*," 544 U.S. at 489 (emphasis added); *see also*

*Cherry Hill Vineyard, LLC v. Baldacci*, 505 F.3d at 31 (Selya J.) ("This three-tiered

system has been justified on multiple grounds: as an efficient means of controlling

the distribution of alcoholic beverages, as an effective means of promoting

temperance, and as a facilitating means of collecting excise taxes.  Its legitimacy has

been vouchsafed by no less an authority than the Supreme Court.") (internal citations

omitted).[19]

---

[19] Plaintiffs-Appellants claim in a footnote that Rhode Island's "regulatory system
has sometimes misleadingly been referred to by the historic name 'three-tier system.'
It no longer has such a system, and allows manufacturers to sell directly to
consumers without going through a wholesaler and retailer. R.I. Gen. L. § 3-4-8(a)."
(Appellants' Br. at 26, n. 11.)  Plaintiffs-Appellants are incorrect.  First, an out-of-
state winery may make a sale to a Rhode Island consumer at the winery's premises
and ship that wine to the Rhode Island consumer's address – but only where that sale
was an *in-person* transaction. The sales transaction takes place entirely out-of-state
and is one over which the State has no jurisdiction or authority.  In any event,
Plaintiffs-Appellants conflate two concepts. That there may be an *exception* to
Rhode Island's three-tier system that allows out-of-state wineries to bypass the
system entirely (i.e., their wine does not pass through the in-state wholesalers or the
in-state retailers) does not negate the existence of that three-tier system.  *See*
*Granholm*, 544 U.S. at 474 ("subjecting out-of-state wineries, but not local ones, to
the three-tier system" violated the dormant Commerce Clause); *Family Winemakers*
*of California v. Jenkins,* 592 F.3d at 5 (like most states, Massachusetts "imposed a
three-tier system to control the sale of alcoholic beverages within their territories";

As the District Court stated, based on this view of the three-tier system, the Supreme Court has distinguished between a regulatory provision that is an "essential feature" of a three-tier system and one that is not. *See, e.g., Tennessee Wine,* 139 S. Ct. at 2471-72 (durational residency requirement is "not an essential feature of a three-tiered scheme"). Following *Tennessee Wine*, the courts that have addressed the "essential feature" question have uniformly held that the regulatory requirements at issue here are essential to the State's three-tier system. *See, e.g., Sarasota Wine Market, LLC v. Schmitt*, 987 F.3d at 1183 (plaintiff "without question attacks core provisions of Missouri's three-tiered system that the [Supreme] Court . . . described as 'unquestionably legitimate'"; Missouri's retailer and wholesaler physical presence requirements and its mandate to purchase only from in-state wholesalers "are an essential feature of its three-tiered scheme"; dismissal of plaintiffs' Commerce Clause complaint affirmed); *Lebamoff Enterprises v. Whitmer*, 956 F.3d

---

through legislation in 2006, "Massachusetts has adjusted the separation between these three tiers" and the ability of out-of-state wineries to remain in or opt out of the three-tier system); *Cherry Hill Vineyard, LLC v. Baldacci*, 505 F. 3d at 31 (Maine's three-tier system "admits of an exception for small vintners"); *accord Lebamoff Enterprises, Inc. v. Whitmer*, 956 F. 3d at 863 (noting that a two-tier system exists in Utah for wine because Utah is the sole importer and main retailer and then underscoring that *Granholm* concerned "a discriminatory *exception* to a three-tier system" regarding wine (not an elimination of the three-tier system for wine)); *B-21 Wines, Inc. v. Bauer*, 38 F. 4th at 226 ("we have no reason to rule today that the limited statutory exception made available by North Carolina to in-state and out-of-state wineries means that the State has abandoned its three-tier system").

at 872 (upholding Michigan's requirement that retailer be in-state to make deliveries because "opening up the State to direct deliveries from out-of-state retailers *necessarily* means opening it up to alcohol that passes through out-of-state wholesalers or for that matter no wholesaler at all" (emphasis added)); *B-21 Wines, Inc. v. Bauer,* 38 F.4th at 228 ("the direct shipping of alcoholic beverages to North Carolina consumers by out-of-state retailers would completely exempt those out-of-state retailers from the three-tier requirement.  That would open the North Carolina wine market to less regulated wine, undermining the State's three-tier system and the established public interest of safe alcohol consumption that it promotes. . . . Eliminating the role of North Carolina's wholesalers in this way would create what the court of appeals in [*Lebamoff Enterprises, Inc. v.] Whitmer* appropriately called 'a sizeable hole' in the State's three-tier system."; affirming decision upholding North Carolina's retailer presence requirement, denying plaintiffs' summary judgment motion and granting state defendants' motion); *Tannins of Indianapolis v. Cameron*,  2021 WL 6126063, at *4 ("In short, *Lebamoff* confirmed that states with a three-tier system can prohibit direct-to-consumer alcohol deliveries by out-of-state retailers without violating the Commerce Clause. And Kentucky is no different. Like Michigan in *Lebamoff*, Kentucky regulates alcohol distribution within its borders via a three-tier system. Like Michigan, Kentucky has a legitimate interest in preserving the integrity of its three-tier system. Like Michigan, 'there is no other way' Kentucky

41

'could preserve the regulatory control provided by the three-tier system' other than by prohibiting direct-to-consumer alcohol deliveries by out-of-state retailers. And thus, like Michigan's, Kentucky's ban on such deliveries is constitutionally permissible under both the Commerce Clause and the Twenty-first Amendment.") (internal citations and quotations omitted). *See also Brooks v. Vassar*, 462 F.3d 341, 352 (4th Cir. 2006) ("[A]rgument challenging the three-tier system itself . . . is foreclosed by the Twenty-First Amendment and . . . *Granholm*."); *Cooper v. Tex. Alcoholic Beverage Comm'n*, 820 F.3d 730, 743 (5th Cir. 2016) ("Distinctions between in-state and out-of-state retailers and wholesalers are permissible only if they are an inherent aspect of the three-tier system.") (citation omitted), *cert. denied sub nom., Tex. Package Stores Ass'n v. Fine Wine & Spirits of N. Tex.*, ___ U.S. ___, 137 S. Ct. 494 (2016); *Jelovsek v. Bredesen*, 545 F.3d 431, 436 (6th Cir. 2008) (a State's "decision to adhere to a three-tier distribution system is immune from direct challenge on Commerce Clause grounds").

As in the recent cases of *Sarasota Wine, Lebamoff*, *B-21 Wines,* and *Tannins of Indianapolis,* Plaintiffs-Appellants seek the elimination of the retailer presence requirement and the State's mandate to purchase from an in-state wholesaler. Plaintiffs-Appellants' proffered expert agrees that the in-state wholesaler purchase mandate is a core component of the three-tier system in its "strictest form" that most States have, and claims that it "would be beneficial to producers of all sorts, and to

42

retailers, for them to be able to buy and sell among themselves *without a wholesaler being involved*" (Wark Dep. Tr. 43:5-24 (emphasis added); 102:19-24; 104:12-16; Appx. 318; 348; 350.)   As in *Lebamoff*, if Plaintiffs are successful, that will "effectively eliminate the role" of Rhode Island's wholesalers and "create a sizeable hole in the three-tier system."  *Lebamoff*, 956 F.3d at 872; *accord B-21 Wines*, 36 F.4th at 228.

Consistent with the several courts that have decided this same issue, the District Court held:

> Given the United States Supreme Court's endorsement of this system as "unquestionably legitimate" and that finding in Plaintiffs' favor would dismantle this system, the Court cannot find that Rhode Island's alcohol regulatory system violates the dormant Commerce Clause.

Addendum B at 50.

The District Court's conclusion on this issue is correct, and the judgment should be affirmed.

## IV. THAT COMMON CARRIER SHIPMENT IS "THE ONLY FEASIBLE WAY" OUT-OF-STATE RETAILERS CAN DELIVER WINE TO RHODE ISLAND CONSUMERS DOES NOT RENDER THE BAN ON THE USE OF COMMON CARRIERS BY ANY RETAILER UNCONSTITUTIONAL UNDER THE DORMANT COMMERCE CLAUSE

As the District Court held (and Appellants concede), Rhode Island does not allow any retailer to use common carriers to deliver wine to Rhode Island consumers, so the prohibition is not facially discriminatory.  (Addendum B at 51-52; Appellants'

Br. at 6.)   Appellants argue on appeal that the universal ban is nevertheless discriminatory "because the use of common carriers is the only feasible way [out-of-state retailers] can deliver individual wine orders to consumers" (Appellants' Br. at 11).

Rhode Island evenhandedly imposes delivery and shipment restrictions on *all* licensed retailers as part of "an effective and uniform system for controlling liquor." *Granholm*, 544 U.S. at 484.  A law is not discriminatory merely because it might not provide an out-of-state retailer with the same economic opportunities as licensed in-state retailers. *See Exxon Corp. v. Maryland,* 437 U.S. 117, 120 (1978).  Nor is it discriminatory simply because the out-of-state retailer's preferred business model (direct shipping) is not allowed.  *Id.*; *see also Breard v. Alexandria*, 341 U.S. 622, 638 (1951) (it was constitutionally "immaterial" under a Commerce Clause analysis that alternative methods of doing business did not produce as much business as the method subject to regulation).

This Court recognized this principle in another case rejecting a Commerce Clause challenge to Rhode Island's alcohol regulations (including the prohibition on chain stores holding Class A retail licenses that Plaintiffs challenged in their Complaint but not in their summary judgment motion), in which Judge Selya quoted *Exxon* and explained:  "Thus, the fact that the mosaic of state laws enacted by the General Assembly may have had a negative impact on W & S's business model is,

44

in itself, insufficient to show discriminatory effect." *Wine & Spirits Retailers, Inc. v. Rhode Island*, 481 F.3d 1, 15 (1st Cir. 2007) (quoting *Exxon*, 437 U.S. at 126) (internal citations omitted), *cert. denied*, 552 U.S. 889 (2007).[20]

The Commerce Clause forbids the states from imposing economic burdens on out-of-state economic interests to create an advantage for in-state economic interests. *Granholm*, 544 U.S. at 472 ("States may not enact laws that burden out-of-state producers or shippers simply to give a competitive advantage to in-state businesses"). But states are not obligated to ensure equally efficient access to out-of-state business interests. *Exxon, supra.* That is particularly so here where Appellants seek an advantage for the out-of-state retailers' economic interests (the use of common carrier delivery as a preferred business model) over the in-state retailers (who must use only their own vehicles).

Appellants' argument that the common carrier ban is unconstitutional in practical effect should therefore be rejected.

---

[20] In finding that the plaintiffs failed to show "substantial evidence of an actual discriminatory effect" from Maine's direct shipping ban that applied to in-state and out-of-state farm wineries, this Court in *Cherry Hill v. Baldacci* affirmed the district court's judgment granting summary judgment to the defendants and rejecting the Commerce Clause challenge.

## V.  THIS COURT SHOULD NOT CONSIDER THE WAIVED CLAIM CONCERNING THE SO-CALLED "PERSONAL TRANSPORTATION LIMIT"

Appellants expressly abandoned their argument concerning Rhode Island's so-called limitation on wine transportation before the District Court, admitting that they lacked evidence of standing necessary to support it.  (Appx. 461-462.)[21]  They cannot revive it here.  *Fryar v. Curtis*, 485 F.3d 179, 183 (1st Cir. 2007) ("An issue is waived when a defendant intentionally relinquishes or abandons a legal right."); *see also Sharp v. Hylas Yachts, LLC*, 872 F.3d 31, 50 (1st Cir. 2017) (noting that the "raise-or-waive" rule precluded advancing argument on appeal); *United States v. Bulger*, 816 F.3d 137, 157 (1st Cir. 2016) ("Whether you characterize Bulger's Brady claim as unpreserved because he did not seek a ruling below, or waived for failure to adequately develop it on appeal, his claim fails.").

During oral argument before the District Court on cross-motions for summary judgment, counsel for Appellants began his presentation by stating the following:

> First, as a preliminary matter, I wish to let the Court know that we are no longer pursuing our claim that the personal transportation limit, which applied only to wine that crossed state lines, is unconstitutional,

---

[21] Nor should this Court agree to Plaintiffs-Appellants' request to consider the remedy issue where the "nature of the . . . remedy is to be determined by the nature and scope of the constitutional violation," *Missouri v. Jenkins*, 515 U.S. 70, 88 (1995), and no constitutional violation has been proven.  Plaintiffs-Appellants' request for a remedy regarding the "personal transportation limit" in the form of "an injunction prohibiting the defendants from enforcing" it (Appellants' Br. at 40) is especially improper because Plaintiffs-Appellants waived that claim (Appx. 461-462).

not entirely for the reasons suggested by the Defendants, but because on reviewing the record we don't believe we have sufficient evidence to meet standing that there's imminent harm to the Plaintiffs on that issue; and so we don't think we should pursuit [sic] it without because it's jurisdictional without standing.

(Appx. 461-462.)  Having abandoned this argument before the District Court at the outset of oral argument, Appellants are barred from pursuing it on appeal.  *Fryar* 485 F.3d at 183 (explaining that affirmative agreement to proceed on some claims but not others at District Court precludes consideration on appeal).

But should this Court choose to consider this issue (which it should not), Appellants' argument (Appellants' Br. at 31-34) should be rejected.  First, the Complaint contains no allegations or request for relief related to this transportation limit.  (Appx. 9-15.)  Second, Appellants' legal position is wrong.  The "importation orders" provision (R.I. Gen. Laws § 3-4-1) has nothing to do with a Rhode Island consumer's "personal transportation of wine" across state lines.  It is a provision that applies to the State's Division of Taxation processing an order by a wholesaler for a product that is not currently carried by licensed Rhode Island wholesalers or retailers.  *See* R.I. Gen. Laws §§ 3-4-1 ("A person desiring to import beverages into this state may place with the Division of Taxation an order directed to a dealer for the beverage he or she desires . . . .); 3-4-2 ("It is a condition precedent to the receiving of the merchandise covered by the order that the party desiring the importation has paid the [D]ivision of [T]axation a service charge. . . ."); 3-4-3 ("The

Division of Taxation may arrange for the importation and payment of the sale price of the imported article. . . .").

Because Appellants' "transportation limit" argument is procedurally improper and substantively defective, it should be rejected.

## CONCLUSION

Because the District Court correctly applied the constitutional principles set forth in *Tennessee Wine* as devolved from those articulated in *Granholm*, the District Court's judgment granting summary judgment to Defendants-Appellees and denying summary judgment to Plaintiffs-Appellants should be affirmed in all respects.

Dated:        April 17, 2023

<div style="margin-left: 40%">

Respectfully submitted,

/s/ *Ryan M. Gainor*
  Ryan M. Gainor
  Gerald J. Petros
HINCKLEY ALLEN & SNYDER LLP
100 Westminster Street, Suite 1500
Providence, Rhode Island  02903
401.274.2000
gpetros@hinckleyallen.com
rgainor@hinckleyallen.com

      -and-

</div>

/s/ *Deborah A. Skakel*
Deborah A. Skakel
BLANK ROME LLP
1271 Avenue of the Americas
New York, New York  10020
212.885-5148
dskakel@blankrome.com

*Attorneys for Defendant-Appellee*
*Rhode Island Responsible Beverage*
*Alcohol Coalition, Inc.*

**CERTIFICATE OF COMPLIANCE**

**Certificate of Compliance with Type-Volume Limit,**
**Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the part of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains no more than 13,000 words.  This document contains 9,974 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 365 in 14-point Times New Roman.

/s/ Deborah A. Skakel
Deborah A. Skakel
BLANK ROME LLP
1271 Avenue of the Americas
New York, New York  10020
212.885.5148
dskakel@blankrome.com

*Co-counsel for Defendant-Appellee*
*Rhode Island Responsible Beverage*
*Alcohol Coalition, Inc.*

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 17, 2023, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system, which electronically served a copy on all counsel of record.

/s/ Deborah A. Skakel

Deborah A. Skakel
BLANK ROME LLP
1271 Avenue of the Americas
New York, New York  10020
212.885.5148
dskakel@blankrome.com

*Co-counsel for Defendant-Appellee*
*Rhode Island Responsible Beverage*
*Alcohol Coalition, Inc.*

# ADDENDUM

# TABLE OF CONTENTS

**Page**

R. I. Gen. Law § 3-4-8(a):  Unlawful sale and shipment................................  ADD1

R.I. Gen. Law § 3-5-10:  Residence of licensees and qualifications of persons and corporations as licensee. ......................................................  ADD1

R.I. Gen. Law § 3-6-9:  Wholesaler's license--Class A.  ..............................  ADD4

R.I. Gen. Law § 3-6-10:  Wholesaler's license--Class B.  ..............................  ADD5

R.I. Gen. Law § 3-7-1:  Class A license--Towns and cities of less than 10,000. .................................................................................  ADD6

R.I. Gen. Law § 3-7-3:  Class A license--Towns and cities of 10,000 or more. ....................................................................................  ADD6

R.I. Gen. Law § 3-7-18:  Licensed retailers to purchase from licensed wholesalers only. ....................................................................  ADD8

8230 R.I. Admin. Code 30-10-1.4.10:  Deliveries – Retail. .............................  ADD8

230 R.I. Admin. Code 30-10-1.4.27:  Premises – Retail. ................................  ADD9

## ADDENDUM OF STATUTES AND REGULATIONS

1.   **<u>R. I. Gen. Law § 3-4-8(a)</u>:  Unlawful sale and shipment**.

(a) It shall be unlawful for any person in the business of selling intoxicating beverages in another state or country to ship or cause to be shipped any intoxicating beverage directly to any Rhode Island resident who does not hold a valid wholesaler license issued by the State of Rhode Island. The foregoing shall not apply to any order for intoxicating beverages personally placed by the purchaser at the manufacturer's premises, for shipment to an address in Rhode Island for nonbusiness purpose. Any shipment of intoxicating beverages pursuant to this section shall contain the language: "Contains Alcohol, Adult Signature (over 21) Required for Delivery."

2.   **<u>R.I. Gen. Law § 3-5-10</u>:  Residence of licensees and qualifications of persons and corporations as licensee.**

(a)(1) Except as otherwise provided, licenses are issued only to citizens who are residents of this state. It is not required that dining car companies, sleeping car companies, railroad companies operating in this state, or companies operating passenger-carrying marine vessels in this state be citizens of this state in order to be eligible to receive retailers' Class G licenses. Retailer's licenses may, however, be issued to corporations incorporated in any other of the United States which are authorized by the secretary of state to transact business in this state.

(2) Notwithstanding the provisions of subsection (a)(1) of this section, no license shall be issued, granted, renewed, or transferred to any trust or trustee or to any corporation of which any share or shares of stock or other indicia of ownership or control are owned or held by any trust, or trustee, business organization, or other entity or person other than a natural person or corporation authorized by the secretary of state to transact business in this state; provided, however, that this subsection shall not affect any grant, renewal, or transfer of a license which occurred prior to the effective date of this subsection [June 15, 2000].

(b)(1) In applications for beverage licenses by corporations except those having more than twenty-five (25) stockholders, the names and addresses of all officers and members of the board of directors and of all stockholders shall be filed with the board, body, or official to whom application is made. No beverage license shall be issued to the corporation unless each officer, director or stockholder is a suitable person to hold a license within the discretion of the board, body or official to whom application is made.

(2) All those corporations holding beverage licenses shall report to the board, body or official who issued the licenses the name of any newly elected officer or director and the acquisition by any person of more than ten percent (10%) of any class of corporate stock, within thirty (30) days after the election or acquisition. Thereupon, the board, body or official may call a hearing, at its discretion, to

determine whether the new officer, director or stockholder is a suitable person under this section and the board, body or official may revoke or suspend the license if the new officer or director or stockholder is not a suitable person to hold a license.

(3) No person shall acquire fifty percent (50%) or more of any class of the stock of any corporation licensed under this section, except corporations having more than twenty-five (25) stockholders, unless permission for the acquisition is first given by the board, body or official who issued the license. Application for permission to acquire stock is subject to the provisions of § 3-5-19 relating to the transfer of a license to another person except that it shall not be necessary that a new bond be given. Unless the board, body or official determines that the person seeking permission to acquire fifty per cent (50%) or more of the corporation's stock is a suitable person to hold a license, the permission shall not be given.

(4) The beverage license of a corporation is subject to suspension or revocation for failure to comply with any of the provisions of this section or for any fraud or misrepresentation in connection with the beverage license.

(c) Applicants for beverage licenses shall make full disclosure in their applications for a license of any interest, whether direct or indirect, by any other person, firm or corporation in the license applied for, and failure to do so or any misrepresentation by the applicant may be cause for denial of the application or revocation of the license if granted by the board, body or official issuing the license.

ADD3

(d) The board, body or official issuing beverage licenses may also deny applications of persons who have criminal records, or who have records of repeated violations of this title.

3.    **R.I. Gen. Law § 3-6-9**:  **Wholesaler's license--Class A.**

A wholesaler's license, Class A, authorizes the holder to keep for sale and to sell malt beverages and wines at wholesale at the place described to holders of licenses under this title within this state and to holders of wholesale licenses in other states and the transportation and delivery from the place of sale to those license holders or to a common carrier for that delivery. Sales by a wholesaler in this state to a holder of a wholesale license in another state shall be only to a wholesaler who is a distributor of the same brand of malt beverages or wines subject to permission by the department. The license shall not authorize the sale of malt beverages or wines for consumption on the premises where sold nor their sale for their delivery outside this state in violation of the law of the place of delivery. The annual fee for the license is two thousand dollars ($2,000) prorated to the year ending December 1 in every calendar year, and shall be paid to the general treasurer for the use of the state. Whenever any malt beverages or wines are sold outside the state pursuant to this section, refunds or credits of import fees previously paid on those malt beverages or wines shall be made to holders of wholesaler's licenses under this title in accordance with regulations promulgated by the division of taxation.

ADD4

4.     **R.I. Gen. Law § 3-6-10**:  **Wholesaler's license--Class B**.

(a) A wholesaler's license, Class B, authorizes the holder to keep for sale and to sell malt and vinous beverages and distilled spirits at wholesale, at the place described in the license, to holders of licenses under this title within this state and to holders of wholesale licenses in other states and authorizes the transportation and delivery from the place of sale to those license holders or to a common carrier for that delivery. Sales by a wholesaler in this state to a holder of a wholesale license in another state shall be only to a wholesaler who is a distributor of the same brand of malt beverages, vinous beverages, and distilled spirits subject to permission by the state liquor control administrator. The license shall not authorize the sale of beverages for consumption on the premises where sold nor the sale of beverages for delivery outside this state in violation of the law of the place of delivery.

(b) The annual fee for the license is four thousand dollars ($4,000) prorated to the year ending December 1 in every calendar year, and shall be paid to the general treasurer for the use of the state whenever any malt beverages, vinous beverages, and distilled spirits are sold outside the state pursuant to this section. Refunds or credits of import fees previously paid on malt beverages, vinous beverages and distilled spirits shall be made to holders of wholesaler's licenses under this title in accordance with regulations promulgated by the division of taxation.

5.    **R.I. Gen. Law § 3-7-1**:  **Class A license--Towns and cities of less than 10,000**.

In cities and towns having a population of less than ten thousand (10,000) inhabitants, a retailer's Class A license authorizes the holder to keep for sale and to sell at the place described beverages at retail and to deliver the beverages in a sealed package or container, which package or container shall not be opened nor its contents consumed on the premises where sold. The sale of any quantity of beverages to a nonlicense holder constitutes a sale at retail. These provisions shall not be construed to limit the powers of the department of business regulation to issue licenses on condition, nor to make rules and regulations as provided. The annual fee for the license is four hundred dollars ($400) prorated to the year ending December 1 of every calendar year.

6.    **R.I. Gen. Law § 3-7-3**:  **Class A license--Towns and cities of 10,000 or more.**

(a) In cities and towns having a population of ten thousand (10,000) or more inhabitants, a retailer's Class A license authorizes the holder to keep for sale and to sell, at the place described, beverages at retail and to deliver the beverages in a sealed package or container, which package or container shall not be opened nor its contents consumed on the premises where sold. The holder of a Class A license, if other than a person entitled to retail, compound, and dispense medicines and poisons, shall not on the licensed premises engage in any other business, keep for sale or sell any

goods, wares, merchandise or any other article or thing except the beverages authorized under this license and nonalcoholic beverages. This provision shall not apply to the sale or selling of cigarettes, newspapers, cigars, cigarette lighters, gift bags, prepackaged peanuts, pretzels, chips, olives, onions, cherries, hot stuffed cherry peppers, Slim Jims and similar pre-packaged dried meat products, pickled eggs, popcorn, pre-packaged candy, styrofoam cooler, lemons, limes, and ice, nor to home bar accessories such as pourers, glasses, cork screws, stirrers, flasks, jiggers, wine racks, ice crushers, bottle openers, can openers and any other items of like nature which may, by suitable regulation of the director of business regulation, be authorized to be sold. A holder of a Class A license will not be prohibited from providing ATM machines to the general public for use on its licensed premises. This section shall not apply to promotional free goods which are subject to approval by the director. In the city of Newport this license may be issued to any person, firm or corporation who are owners of bona fide markets for the sale of alcoholic beverages in conjunction with and in addition to the sale of meats or groceries in those bona fide markets. A person, firm or corporation in that city may obtain a limited Class A license to sell beer, lager and ale on the same premises as other goods, wares, merchandise and articles are sold. No Class A license is granted for any premises unless the premises constitute a separate store, the entrance or entrances to which shall be exclusively from the street or streets or arcade. This provision shall not apply

to any person, firm or corporation in the city of Newport who are owners of bona fide markets for the sale of alcoholic beverages in conjunction with and in addition to the sale of meats or groceries in those bona fide markets and as long as the market is owned and operated by the mother, father, son, daughter, brother or sister of the original licensee, but not otherwise.

(b) The premises shall have opaque walls which shall completely partition and sever the premises from any adjoining market, concession or business. This provision shall not be construed to limit the powers of the department to issue licenses on condition nor to make rules and regulations as provided. The annual fee for a Class A license is five hundred dollars ($500) to one thousand dollars ($1,000) prorated to the year ending December 1st in every calendar year.

(c) Any licenses issued under the provisions of this section prior to May 8, 1964 remains in full force and effect.

### 7.   <u>R.I. Gen. Law § 3-7-18</u>:  Licensed retailers to purchase from licensed wholesalers only.

All holders of retail licenses except retail Class G licenses shall purchase beverages for sale under their licenses only from the holder or holders of wholesale licenses under this title.

### 8.   <u>230 R.I. Admin. Code 30-10-1.4.10</u>:  Deliveries – Retail.

A.     A Class A alcoholic beverage licensee may deliver alcoholic beverages to the residence of a customer.  In making a permissible delivery, a licensee must be

sure that the alcoholic beverage is not delivered into the possession of a person under the age of twenty-one (21).  No identification documents shall be accepted unless they bear a photographic representation of the person accepting the delivery.

B.     Sale and delivery shall be made only during the legal hours of business for a Class A license by an employee and/or owner of the licensed establishment.

C.     Each delivery must be accompanied by an invoice which shall state at a minimum:

      1.     Name of licensed establishment or person making delivery;

      2.     Name and address of purchaser;

      3.     Date of delivery;

      4.     List of products being delivered; and

      5.     Signature of consignee.

**9.     230 R.I. Admin. Code 30-10-1.4.27:  Premises – Retail.**

A.     All licenses granted or issued must identify a premise for operation under the license. The licensed premises is that portion of the licensee's property owned, leased or controlled by the licensee, on which or from which alcoholic beverage may be sold, served or stored.  It shall be defined by the licensee at the time the application (new or renewal) is filed and finally determined by the approval of the local licensing board.

B.    In addition, every applicant is required to submit to the local licensing board and keep current an accurate drawing of the licensed premises outlining and giving dimensions of the area which is actually the subject of the license.  Any sale, service or storage of alcoholic beverages outside the licensed premises is a violation.

C.    Once the licensed premise is established, any expansion thereafter shall require a hearing as prescribed in R.I. Gen. Laws § 3-5-17 and the approval of the local licensing board.  A decrease in the area of the licensed premises requires notification to the local licensing board and filing of a revised drawing.  Any notice of a decrease in the area shall not require a public hearing.