Case No. 22-1843

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

---

KAMBIS ANVAR; MICHELLE DRUM,

Plaintiffs - Appellants,

VINCENT COLAPIETRO; MICHAEL OSEAN,

Plaintiffs

v.

ELIZABETH K. DWYER, in her official capacity as Interim Director of
RI Department of Business Regulation; PETER F. NERONHA, in his
official capacity as Attorney General of Rhode Island; RHODE ISLAND
RESPONSIBLE BEVERAGE ALCOHOL COALITION, INC.

Defendants - Appellees.

---

Appeal from a Final Judgment of the United States District Court
for the District of Rhode Island, 1:19-cv-00523.

---

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

---

James A. Tanford
Robert D. Epstein
Epstein Seif Porter & Beutel, LLP
50 S. Meridian St. #505
Indianapolis IN 46204
(317) 639-1326

# Table of contents

Table of authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.  Reply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. The challenged laws are discriminatory and protect Rhode . . . . . . . 4
Island wine retailers from interstate competition

III. A total ban of home deliveries of wine by out-of-state . . . . . . . . . . . 6
retailers is unconstitutional when they could be safely regulated
under a permit system

IV. Other issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   A. This court should follow precedents from the Supreme . . . . . . . 11
   Court and this circuit, not from other circuits

   B. The case is about the validity of two specific features of . . . . . . 14
   Rhode Island's liquor laws, not the entire "three-tier" system

   C. Physical-presence requirements obviously discriminate . . . . . . 18
   against out-of-state entities

   D. The concrete evidence shows that there are no adverse . . . . . . . 20
   public health consequences resulting from home deliveries
   by out-of-state retailers

   E. Requiring that wine pass through an in-state wholesaler . . . . . 24
   serves no public safety purpose

   F. Inspections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

   G. Ability to revoke license . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

V. Remedy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

VI. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Certificate of compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Certificate of service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# Table of authorities

## Cases

*Arnold's Wines, Inc. v. Boyle*, 571 F.3d 185 (2d Cir 2009). . . . . 12, 13, 27

*B-21 Wines, Inc. v. Bauer*, 36 F.4th 214 (4th Cir. 2022) . . . . . . . . 12, 27

*Bacchus Imports Ltd. v. Dias*, 468 U.S. 263 (1984) . . . . . . . . . . . . . . 6

*Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848 (7th Cir. 2000). . . . . . 13

*Cherry Hill Vineyards v. Baldacci*, 505 F.3d 28 (1st Cir. 2007) . . . . . 12

*Family Winemakers of Cal. v. Jenkins,* . . . . . . . . . . . . . . . . . . . . *passim*
592 F.3d 1 (1st Cir. 2010)

*Freeman v. Corzine,* 629 F.3d 146, 161-61 (3d Cir. 2010) . . . . . . . . . 12

*Granholm v. Heald*, 544 U.S. 460 (2005). . . . . . . . . . . . . . . . . . *passim*

*In re Rockwell*, 968 F.3d 12 (1st Cir. 2020) . . . . . . . . . . . . . . . . . . . . . 12

*Lebamoff Enterpr., Inc. v. Rauner,* 909 F.3d 847 (7th Cir. 2018) . . 12, 18

*Lebamoff Enterpr., Inc. v. Whitmer,* 956 F.3d 863 (6th Cir. 2020)   13, 27

*Nat'l Pork Producers Council v. Ross*, 598 U.S. ___, . . . . . . . . . . . . . 13
No. 21-468 (May 11, 2023)

*North Dakota v. U.S.,* 495 U.S. 423 (1990). . . . . . . . . . . . . . . . . . . . . 19

*Sarasota Wine Mkt. v. Schmitt*, 987 F.3d 1171 (8th Cir. 2021) . . . . . . 13

*Siesta Village Mkt. v. Perry*, 530 F.Supp. 2d 848 (N.D. Tex. 2008) . . . 12

*Tenn. Wine & Spirits Retailers Assoc. v. Thomas,* . . . . . . . . . . . . *passim*
139 S.Ct. 2449 (2019)

*West Lynn Creamery, Inc. v. Healy,* 512 U.S. 186 (1994). . . . . . . . . . . . . 6

*Wine Country Gift Baskets.com v. Steen*, 612 F.3d 809 . . . . . . 12, 13, 27
(5th Cir. 2010)

## Constitutions, statutes and rules

U.S. CONST. art I, § 8 (Commerec Clause) . . . . . . . . . . . . . . . . . *passim*

U.S. CONST. amend. XXI, § 2.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

21 C.F.R. 110.35. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

27 C.F.R. 24.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

FED. R. EVID. 701-702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

235 ILL COMP. L. § 5/6-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

N.C. GEN. ST. 18B-900(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

N.Y. STATE LIQ.AUTH. RULES § 53.1 . . . . . . . . . . . . . . . . . . . . . . . . 29

R.I. GEN. L. § 3-1-1(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R.I. GEN. L. § 3-4-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

R.I. GEN. L. § 3-4-8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 24

R.I. GEN. L. § 3-6-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 24

R.I. GEN. L. § 3-6-1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

R.I. GEN. L. § 3-6-1.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

R.I. Gen. L. § 3-7-7.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Other authority**

2018 Report to Congress on the Prevention and Reduction of  . . . . . . 26
Underage Drinking, Supplemental Materials: Enforcement Data
https://www.stopalcoholabuse.gov/media/ReportToCongress/
2018/report_main/Enforcement_Data_508.pdf

Dept. Bus. Regs., Information Sheets, Classes of DBR-Issued  . . . . . . 11
Liquor Licenses and Municipal Retail License Types,
https://dbr.ri.gov/sites/g/files/xkgbur696/files/documents/divisions/
comm licensing/liquor/Info_DBRIssuedLiquorLicenses.pdf

*Five Things About Deterrence,* Nat'l Inst. of Justice (2016) . . . . . . . . 28
https://ncjrs.gov/pdffiles1/nij/247350.pdf

## I. Reply

Plaintiffs challenge the constitutionality of two features of Rhode Island's liquor laws that prohibit out-of-state retailers from making home deliveries of wine.[1] Because in-state retailers are allowed to do so, the ban discriminates against out-of-state wine retailers, protects local businesses from interstate competition, and violates the Commerce Clause. The question is whether the Twenty-first Amendment can save it.

There are three controlling precedents on the balance between these two constitutional provisions: *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S.Ct 2449 (2019); *Granholm v. Heald,* 544 U.S. 460 (2005); and *Family Winemakers of Cal. v. Jenkins*, 592 F.3d 1 (1st Cir. 2010). Their holdings are clear and consistent. The Twenty-first Amendment is limited by the nondiscrimination principle of the Commerce Clause, so a discriminatory rule is unconstitutional unless the State proves with concrete evidence that it serves a legitimate local public health or safety purpose that cannot be attained through reasonable nondiscriminatory

---

[1]In our opening brief, we erroneously included a section arguing that a third feature was also unconstitutional: a limit on personal transportation of wine. That section should have been omitted because, as the State pointed out, plaintiffs withdrew that issue during District Court proceedings because neither plaintiff had standing to raise it. Plaintiffs regret the error.

alternatives. *Tenn. Wine*, 139 S.Ct. at 2470, 2474; *Granholm v. Heald,* 544 U.S. at 487, 492-93;  *Family Winemakers,* 592 F.3d at 5, 17.

The reasonable nondiscriminatory alternative in this case is a permit system. Other states use them to regulate home deliveries. Rhode Island uses them to regulate other aspects of its liquor distribution system. The permit system has been endorsed as a reasonable alternative by the Supreme Court and this Circuit. *Granholm v. Heald,* 544 U.S. at 491-92; *Family Winemakers*, 592 F.3d at 17. The defendants have no concrete evidence that a permit system would not work to monitor home deliveries by out-of-state retailers and do not claim to be able to satisfy this part of their burden of proof. The State does not even discuss the issue. The failure to establish an essential element of a Twenty-first Amendment defense requires that summary judgment be awarded to Plaintiffs.

Although this appeal may be decided solely on the ground of the defendants' failure to prove that the permit system would be unworkable, Plaintiffs will reply to seven other points argued by the defendants.

  a. Defendants argue that this Court should follow a handful of precedents from other circuits. Plaintiffs reply that this Court should follow precedents from the Supreme Court and this circuit.

b. Defendants argue that ban can be upheld because *Granholm* said "the three-tier system is unquestionably legitimate." Plaintiffs reply that the argument is irrelevant because Rhode Island does not have a three-tier system, and wrong because the Court holds to the contrary that individual discriminatory features may be challenged.

c. Defendants argue that physical-presence requirements are unquestionably legitimate. Plaintiffs reply that the Supreme Court explicitly ruled to the contrary in *Granholm*.

d. Defendants argue that various public health or safety problems might arise in the future if out-of-state retailers were allowed to make home deliveries. Plaintiffs reply that such predictions are speculative and contradicted by evidence showing that no such problems have arisen in states that allow licensed home deliveries.

e. Defendants argue that requiring wine to pass through an in-state wholesaler serves a public safety purpose because it could assist if there were a recall of unsafe wine. Plaintiffs reply that the argument is contrived because Rhode Island does not require all wine to pass through a wholesaler and there is no evidence that unsafe wine is a problem.

f. Defendants argue that the state's ability to conduct on-site inspections justifies discrimination. Plaintiffs reply that such inspections are irrelevant because home deliveries take place away from the inspected premises, and do not justify discrimination because other states have similar enforcement procedures.

g. Defendants argue that the state's ability to revoke an in-state retailer's license justifies discrimination. Plaintiffs reply that if Rhode Island required a license for out-of-state retailers, it would have the same ability to revoke them and the Supreme Court has already held that licensing is a reasonable alternative.

## II. The challenged laws are discriminatory and protect Rhode Island wine retailers from interstate competition

Plaintiffs bear the initial burden to show that a restriction on alcohol distribution is discriminatory. *Family Winemakers*, 592 F.3d at 9. They have done so. Neither defendant disputes that Rhode Island's refusal to license out-of-state retailers to make home deliveries using their own vehicles is discriminatory. "[D]ifferential treatment between in-state and out-of-state [sellers] constitutes explicit discrimination against interstate commerce." *Granholm v. Heald*, 544 U.S. at 467.

However, defendants argue that the ban on using common carriers is not discriminatory because it is even-handed on its face. State Br. at 54-64; Intervenor Br. at 14-17, 43-45. The argument misunderstands the definition of discrimination. The Supreme Court holds that discrimination is established either "[w]hen a state statute directly ... discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests. *Granholm v. Heald,* 544 U.S. at 487; *Tenn. Wine,* 139 S.Ct. at 2471.

This circuit agrees.

> A state law is discriminatory in effect when... "the effect of a state regulation is to cause local goods to constitute a larger share, and goods with an out-of-state source to constitute a smaller share, of the total sales in the market." State laws that alter conditions of competition to favor in-state interests over out-of-state competitors in a market have long been subject to invalidation.

*Family Winemakers*, 592 F.3d at 10-11 (citations omitted).

Plaintiffs' evidence shows a profound discriminatory effect. There are more than 450,000 wines available for sale in the United States, Wark Report ¶¶ 10, 13 (Apx. 043-44), but Rhode Island has authorized only 22,800 of then (5%) for sale in the state. Def. Interrog. 6 (Apx. 061). By prohibiting its residents from purchasing wine from out-of-state retailers, Rhode Island is denying them access to the overwhelming majority of

wines.[2] Online purchasing and home delivery is an important market that plaintiffs could otherwise use to access the vast array of wines outside Rhode Island if they were not prohibited from doing so. *See* Anvar Decl. ¶¶ 2-11 (Apx. 030-31); Drum Decl. ¶¶ 2-9 (Apx.032-33). Without access to wine sold in other states, Rhode Islanders are compelled to buy it locally, and "protecting [local businesses] from the rigors of interstate competition is the hallmark of the economic protectionism that the Commerce Clause prohibits." *West Lynn Creamery v. Healy*, 512 U.S. 186, 205 (1994).

### III. A total ban on home deliveries of wine by out-of-state retailers is unconstitutional when they could be safely regulated under a permit system

When two constitutional provisions are implicated, they are "parts of the same Constitution [and] each must be considered in light of the other and in the context of the issues and interests at stake." *Bacchus Imports Ltd. v. Dias*, 468 U.S. 263, 275 (1984). Neither provision alone controls the outcome.

- If Rhode Island's ban on home deliveries applied equally to in-state and out-of-state retailers, minimal scrutiny would apply and the

---

[2]Intervenor incorrectly claims that Rhode Island wholesalers can order any of these unavailable wines. Br. at 16. To the contrary, a wholesaler can only get one of the 22,800 wines the State has approved, which Intervenor quietly admits elsewhere in its brief. Intervenor Br. at 23.

restriction would be valid under the Twenty-first Amendment. *Granholm v. Heald,* 544 U.S. at 484-85. But when a regulation is discriminatory, the Commerce Clause is also involved because "state regulation of alcohol is limited by the nondiscrimination principle." *Id.* at 487. The Amendment "does not exempt ... discriminatory state alcohol laws... from scrutiny under the Commerce Clause." *Family Winemakers,* 592 F.3d at 5. The Supreme Court "has repeatedly declined to read § 2 as allowing the States to violate the nondiscrimination principle". *Tenn. Wine*, 139 S.Ct. at 2459, 2470.

- If the product were anything other than alcohol, strict scrutiny would apply, and the ban on home deliveries would be invalid under the nondiscrimination principle of the Commerce Clause. *Granholm v. Heald*, 544 U.S. at 487. But when the product is alcohol, the Twenty-first Amendment is also involved, so "we engage in a different inquiry." *Tenn. Wine,* 139 S.Ct at 2474.

This "different inquiry" is a form of intermediate scrutiny that falls between the minimal scrutiny given to even-handed liquor laws under the Twenty-first Amendment and the strict scrutiny given to discriminatory laws under the Commerce Clause. The court asks whether the Plaintiffs

-7-

have proved discrimination, *id.* at 2461-62, whether the State has proved

that the restriction actually protects public health or safety and that

nondiscriminatory alternatives would be insufficient, *id.* at 2474, and

whether concrete evidence shows that the public health and safety effects

predominate over the protectionism. *Id.* The defendants quibble over

whether this should be called intermediate scrutiny, narrow tailoring, or

something else, but ultimately agree that the burden of proof is on the

State to show a genuine justification for discrimination. State Br. at 22-23;

Intervenor Br. at 11-12.

The precedents from this circuit and the Supreme Court are clear and

consistent:

1. *Family Winemakers v. Jenkins,* 592 F.3d at 17:

    Because plaintiffs have shown that § 19F discriminates against
    interstate commerce, Massachusetts bears the heavy burden of
    showing that the statute is nonetheless constitutional because it
    serves a legitimate local purpose that cannot be attained through
    reasonable non-discriminatory alternatives. The state can only
    carry this burden by presenting "concrete record evidence," and
    not "sweeping assertion[s]" or "mere speculation," to substantiate
    its claims that the discriminatory aspects of its challenged policy
    are necessary to achieve its asserted objectives.

2. *Granholm v. Heald,* 544 U.S. at 489, 492-93:

    [We] must consider whether either State regime "advances a
    legitimate local purpose that cannot be adequately served by

reasonable nondiscriminatory alternatives" ... [T]he States provide little concrete evidence for the sweeping assertion that they cannot police direct shipments by out-of-state wineries. Our Commerce Clause cases demand more than mere speculation to support discrimination against out-of-state goods. The "burden is on the State to show that 'the discrimination is demonstrably justified'" ... based on concrete record evidence that a State's nondiscriminatory alternatives will prove unworkable.

3. *Tenn. Wine,* 139 S.Ct at 2474, 2476:

[W]e ask whether the challenged requirement can be justified as a public health or safety measure... "[M]ere speculation" or "unsupported assertions" are insufficient to sustain a law that would otherwise violate the Commerce Clause... [Because] the record is devoid of any "concrete evidence" showing that the ... requirement actually promotes public health or safety; nor is there evidence that nondiscriminatory alternatives would be insufficient to further those interests[,] the Association has fallen far short of showing that the [law] is valid.

The requirement that the State prove that nondiscriminatory alternatives would be ineffective is not an optional or tangential issue. It goes to the heart of the balance between the Twenty-first Amendment and the Commerce Clause. If the State has several regulatory options but chooses the one that most discriminates against out-of-state interests, it has engaged in a purposeful act of economic protection that "is not shielded by § 2." *Tenn. Wine,* 139 S.Ct. at 2474.

The obvious nondiscriminatory alternative is a licensing system requiring out-of-state retailers to get a permit, consent to jurisdiction,

report sales, submit to audits, remit taxes, abide by quantity limits or minimal pricing rules, verify the age of the recipient, and comply with other even-handed regulations. This alternative has been endorsed by the Supreme Court. *Granholm v. Heald,* 544 U.S. at 491-92 ("protecting public health and safety, and ensuring regulatory accountability [can] be achieved through the alternative of an evenhanded licensing requirement:); *Tenn. Wine*, 139 S.Ct at 2476 ("Not only is the 2-year residency requirement ill suited to promote responsible sales and consumption practices ... but there are obvious alternatives that better serve that goal without discriminating against nonresidents"). It has been endorsed by this Circuit. *Family Winemakers*, 592 F.3d at 17 ("The record shows that at least one viable non-discriminatory alternative existed ... the Model Direct Shipment Bill, which the National Conference of State Legislatures adopted in 1997).[3] Other states manage to safely regulate home deliveries of wine from out-of-state retailers through a permit system. Wark report ¶¶ 40-41 (Apx. 049).

The State makes no argument that it has any concrete evidence to show that the permit system would be ineffective. Indeed, it concedes that

---

[3]The Model Bill is included at Apx. 150.

requiring permits and then threatening to revoke them for misbehavior is an effective regulatory tool. State Br. at 52. Rhode Island uses a permit system to regulate every other aspect of liquor distribution including online orders and home deliveries by in-state retailers. *See* State Br. at 11-17; DBR Information Sheets, Classes of DBR-Issued Liquor Licenses.[4] Other states use a permit system to safely monitor home deliveries of wine. Wark report ¶¶ 40-41 (Apx. 049); Letters from regulators (Apx.068-74).

The absence of evidence is dispositive. Where a state claims it is banning interstate commerce in order to protect public health or safety, but "the record is devoid of any 'concrete evidence' showing that ... nondiscriminatory alternatives would be insufficient to further those interests," the ban is unconstitutional. *Tenn. Wine,* 139 S.Ct. at 2474.

## IV. Other issues

### A. This court should follow precedents from the Supreme Court and this circuit, not from other circuits

There are three significant precedents: *Tenn. Wine, Granholm v. Heald,* and *Family Winemakers.* The defendants barely mention *Granholm*, the

---

[4]See https://dbr.ri.gov/sites/g/files/xkgbur696/files/documents/divisions/comm licensing/liquor/Info_DBRIssuedLiquorLicenses.pdf (viewed May 15, 2023).

Supreme Court's only case on home deliveries of wine. They do not discuss *Family Winemakers* at all, this circuit's most recent case on home deliveries of wine.[5] They cite selected phrases from *Tenn. Wine* out of context, but avoid its central holding. Instead of basing their argument on those three case, the defendants devote almost their entire briefs to discussing cases from other circuits that favor their position.[6] Cases from other circuit are obviously not precedent in this circuit, *In re Rockwell*, 968 F.3d 12, 23 (1st Cir. 2020), especially when they conflict with *Family Winemakers*.

In any event, only one of the cases cited by the defendants is actually germane -- *B-21 Wines, Inc. v. Bauer*, 36 F.4th 214 (4th Cir. 2022) -- and it was a split decision with a vigorous dissent. The State omits key details about the other cases that render them of little value. Three involved nondiscriminatory laws: *Wine Country Gift Baskets.com v. Steen*, 612 F.3d 809 (5th Cir. 2010); *Arnold's Wines, Inc. v. Boyle*, 571 F.3d 185 (2d Cir.

---

[5]Instead, they discuss *Cherry Hill Vineyards v. Baldacci*, 505 F.3d 28 (1st Cir. 2007), which did not involve a discriminatory law.

[6]Not surprisingly, they do not  mention cases from other circuits that favor plaintiffs. *E.g., Lebamoff Enterpr., Inc. v. Rauner,* 909 F.3d 847 (7th Cir. 2018); *Siesta Village Mkt. v. Perry*, 530 F.Supp. 2d 848 (N.D. Tex. 2008) (mooted by change in Tex. law); *Freeman v. Corzine,* 629 F.3d 146, 161-61 (3d Cir. 2010) (personal importation limit struck down).

2009); *and Sarasota Wine Mkt. v. Schmitt*, 987 F.3d 1171 (8th Cir. 2021). Three were decided prior to *Tenn. Wine* and assumed that the nondiscrimination principle did not apply to laws regulating retailers, a premise that *Tenn. Wine* rejected as having "no sound basis." 139 S.Ct. at 2471). *Wine Country Gift Baskets.com, supra*; *Arnold's Wines. v. Boyle, supra,* and *Bridenbaugh v. Freeman-Wilson*, 227 F.3d 848 (7th Cir. 2000).

Defendants rely most heavily on one case in which a state ban on direct shipping by out-of-state retailers was upheld -- *Lebamoff Enterpr., Inc. v. Whitmer,* 956 F.3d 863 (6th Cir. 2020). It is  not germane for three reasons. First, it was based in part on the assumption that Commerce Clause's extraterritoriality principle would prevent a state from requiring out-of-state wine retailers to comply with its safety-related alcohol regulations. *Id*. at 872-73. The Supreme Court has since ruled to the contrary that a state may require out-of-state companies to comply with local regulations, as long as those regulations are not discriminatory. *Nat'l Pork Producers Council v. Ross*, 598 U.S. ___, No. 21-468 (May 11, 2023).

Second, the court applied only minimal scrutiny because it character-ized the out-of-state retailers as seeking a non-equivalent privilege to engage in unlicensed and unregulated shipping. 956 F.3d at 867.

Third, *Lebamoff* was decided on a record made a year before the *Tenn. Wine* decision[7] which did not reflect the Court's change in emphasis to public health and safety and therefore did not contain the federal data showing the absence of adverse effects. 956 F.3d at 877 ("plaintiffs have not refuted" state's public-health claim). This court should rely on the record made in this case and decline the defendants' invitation to be bound by the record from five years ago in *Lebamoff*. "States 'remai[n] free to pursue' their [own] legitimate interests in regulating the health and safety risks posed by the alcohol trade, [so] each variation must be judged based on its own features." *Tenn. Wine,* 139 S.Ct. at 2472.

## B. The case is about the validity of two specific features of Rhode Island's liquor laws, not the entire "three-tier" system

Throughout their briefs, the Defendants constantly try to shift the focus of the inquiry away from whether the specific discriminatory features being challenged are constitutional, and onto the strawman question of whether Rhode Island's overall regulatory system is legitimate. In the process, they mischaracterize plaintiffs' claims, Rhode Island's regulatory structure, and *dictum* in *Granholm v. Heald* that "[w]e have previously

---

[7]See Doc. No. 31, 2:17-cv-10191 (E.D. Mich. 2018),

recognized that the three-tier system itself is 'unquestionably legitimate.'" 544 U.S. at 489.

First, the defendants mischaracterize plaintiffs' claims as a broad attack on Rhode Island's basic authority to regulate the distribution of alcohol. State Br. at 34-37. Such hyperbole is not helpful. Plaintiffs challenge two specific interrelated discriminatory features of Rhode Island's liquor laws that prohibit out-of-state retailers from making home deliveries of wine. The State will not issue licenses to retailers outside Rhode Island that would give them the same privilege as in-state retailers to sell wine online and deliver it to consumers, and it prohibits using common carriers. Plaintiffs do not challenge Rhode Island's right to regulate home deliveries, require licenses, and insist that out-of-state retailers verify the age of recipients, remit taxes, report sales, and comply with other regulations.

Second, the defendants mischaracterize Rhode Island's regulatory scheme as a "three-tier" system. *E.g.,* Br. at 47. In a three-tier system:

> [P]roducers of alcohol (whether located in-state or out-of-state) may sell only to licensed in-state wholesalers, and in-state wholesalers may sell only to licensed in-state retailers. Licensed in-state retailers may sell only to consumers. Generally speaking, to reach a consumer, alcohol must pass through all three tiers.

State Br. at 1. Rhode Island has no such requirements. Wine producers may sell directly to consumers without going through a wholesaler. R.I. GEN. L. §§ 3-6-1(b); 3-6-1.1; 3-4-8(a). Beer producers may sell directly to consumers. R.I. GEN. L. §§ 3-6-1(b); 3-6-1.2; 3-7-7.2. Distillers may sell directly to consumers. R.I. GEN. L. § 3-6-1(b). This Circuit has previously held that if the state allows manufacturers to sell directly to consumers and makes the use of a wholesaler optional, the state does not have a three-tier system. *Family Winemakers*, 592 F.3d at 6, 8.

Third, the defendants misstate the holding in *Granholm*. They take the *dictum* "[w]e have previously recognized that the three-tier system itself is 'unquestion-ably legitimate'"[8] out of context. Only nondiscriminatory regulations are "legitimate." 544 U.S. at 488. A discriminatory regulation is not legitimate unless it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Id.* at 489. "[F]acilitating orderly market conditions... and ensuring regulatory accountability" is not a legitimate reason for discrimination by itself because those interests "can also be achieved through the alternative of an evenhanded licensing requirement." *Id.* at 492.

---

[8] 544 U.S. at 489.

If there was any doubt, the Court put the "legitimacy" argument to rest in *Tenn. Wine:*

> This argument ... reads far too much into *Granholm's* discussion of the three-tiered model. Although *Granholm* spoke approvingly of that basic model, it did not suggest that § 2 sanctions every discriminatory feature that a State may incorporate into its three-tiered scheme.

139 S.Ct at 2471. The Court will "analyze [each] provision on its own." *Id.* at 2474. *Accord Family Winemakers,* 592 F.3d at 20-21 (individual discriminatory laws are subject to scrutiny under the Commerce Clause).

The argument that the Twenty-first Amendment gives special constitutional status to three-tier systems is absurd. The Amendment "constitutionaliz[e]" the basic structure of federal-state alcohol regulatory authority that prevailed prior to the adoption of the Eighteenth Amendment." *Tenn. Wine,* 139 S.Ct at 2463. That structure included the principle that state authority to regulate liquor was subject to other constitutional provisions, including the nondiscrimination rule. *Id*. It did not include the three-tier system because it was not created until after the Twenty-first Amendment was ratified. *Family Winemakers,* 592 F.3d at 5. Besides, as the Seventh Circuit noted, there is no reason to think that the Twenty-first Amendment accords privileged status to three-tier

-17-

systems over four-tier, two-tier, or state-run systems. *Lebamoff Enterpr.,*

*Inc. v. Rauner,* 909 F.3d 847, 855 (7th Cir. 2018).

Perhaps recognizing the fragility of their argument that the entire

three-tier system is immune, the State makes a more limited argument

that "essential elements" of the system are immune from scrutiny. Br. at

42-46. Once again, the State is taking one phrase out of context from a

Supreme Court opinion. In *Tenn. Wine,* the Court noted that the residency

requirement at issue was not an essential feature of a three-tier system

but did not suggest that it would have been immune if it were. 139 S. Ct.

at 2471. It also held that a residency requirement could not possibly be

essential because many states did not have them. *Id.* at 2472. The

defendants' argument is therefore irrelevant because many states do not

ban home delivery of wine (see list at Apx. 129-30), so it also cannot be an

essential element of "the three-tier system."

## C. Physical-presence requirements obviously discriminate against out-of-state entities

The State claims that physical-presence requirements have been

consistently upheld, *e.g.*, Br. at 19, 30-31, 44, asserting that "*Granholm*

did not declare a physical presence requirement unconstitutional." Br. at

31. The argument is inexplicable and wrong. *Granholm* said the exact opposite:

> New York's in-state presence requirement runs contrary to our admonition that States cannot require an out-of-state firm "to become a resident in order to compete on equal terms."

544 U.S. at 475.[9] Like other discriminatory laws  that restrict privileges to those within the state's borders, a physical-presence requirement "blatantly favors the State's residents," *Tenn. Wine,* 139 S.Ct at 2457, and "can no longer be defended." *Id.* at 2472.

Intervenor argues that a physical-presence requirement is valid because outdated *dictum* from a plurality opinion in *North Dakota v. U.S.,* said that the Twenty-first Amendment "empowers North Dakota to require that all liquor sold for use in the State be purchased from a licensed in-state wholesaler." 495 U.S. 423, 490 (1990). Br. at 39. It misleadingly paraphrases that case, neglects to indicate it was only a plurality opinion that did not involve the Commerce Clause,[10] omitted the qualifying language that the opinion concerned nondiscriminatory

---

[9]The State misunderstands *Granholm's* holding that the out-of-state firm had to become a resident in order to compete. Br. at 30. It was talking about the physical location of the winery, not whether a non-resident was eligible to open a winery in New York.

[10] It was a Supremacy Clause case about liquor on military bases.

regulations only, *id.* at 434, and did not mention that Justice Scalia joined as the fifth vote only because there was no discrimination. *Id.* at 444. Even if the Court had ruled in 1990 that a state could limit liquor sales to businesses physically located in the state, that principle has since been rejected in *Granholm v. Heald,* and *Tenn. Wine, supra.*

### D. The concrete evidence shows that there are no adverse public health consequences resulting from home deliveries by out-of-state retailers

To justify banning cross-border wine deliveries, the State must present "concrete evidence" that the restrictions protect public health or safety. *Tenn. Wine,* 139 S.Ct at 2474; *Granholm v. Heald,* 544 U.S. at 492-93; *Family Winemakers*, 592 F.3d at 17. The State has not presented a single piece of evidence that home deliveries by out-of-state retailers would cause public health problems. To be sure, consumption of alcohol in general is a public health and safety risk, but that has nothing to do with home deliveries of wine. Most people get their alcohol from local retailers and most of that is beer and spirits. NIH consumption data (Apx. 133).

The State *asserts* that allowing home deliveries by out-of-state retailers would threaten public health and safety, but "unsupported assertions are insufficient to sustain a law that would otherwise violate the Commerce

Clause." *Ibid*. It presents witnesses who speculate that two public-safety problems *might* arise in the future if cross-border home deliveries were allowed -- an increase in unsafe wine, Br. at 47-49, and an increase in access by minors. Br. at 50-51. However, speculation is both inadmissible under FED.R.EVID. 701-702, and "not adequate to substantiate the State's claim that the discriminatory aspects of its alcohol laws are necessary to achieve its asserted objectives." *Family Winemakers,* 592 F.3d at 17.

The past is prologue to the future. The best evidence for what would happen if Rhode Island allowed cross-border deliveries of wine is to look at what has happened in other states that allow it. And the answer is -- nothing. Fourteen states have allowed out-of-state retailers to make home deliveries over the past fifteen years. Apx. 129.[11] None reports any public health or safety problems. Wark report ¶ 18 (Apx. 044); Letters from regulators (Apx. 068-74). Rhode Island admits it has no contrary evidence and is aware of no data or studies showing that home deliveries of wine are a significant factor in any alcohol-related public health and safety

---

[11]In a footnote, Intervenor claims Idaho and Nevada no longer allow direct shipping. Br. at 29. It does not cite to any actual statutes. Even if it were correct that these states had changed their laws, it would be irrelevant. Intervenor admits they formerly allowed direct shipping and Plaintiffs' table gathers data from times when states allowed shipping.

issues. Def. Interrogs. 9, 13-14 (Apx. 178-80). Forty-four states allow out-of-state wineries to make deliveries and none reports any problems. Wark Report ¶¶ 36, 43 (Apx. 048-49). Rhode Island itself has allowed out-of-state wineries to use common carriers to make home deliveries for 20 years, R.I. Gen. L. § 3-4-8(a), and has experienced no public health or safety problems. Def. Interrog. 19 (Apx. 181-82).

The concrete evidence shows that home deliveries of wine from out-of-state licensed retailers do not cause public health and safety problems:

- They do not increase youth access. Wark report ¶¶ 42-43 (Apx. 049); Maryland report at 8 (Apx. 083); Letters from state regulators (Apx. 068-74); FTC Report 34 (Apx 093). This is not surprising. Minors have easier ways to get alcohol, want it immediately rather than waiting for it to arrive, FTC Report at 26-34 (Apx. 085-93), and have no safe place to have wine delivered because they live with their parents or on a college campus. The Supreme Court has previously rejected this argument. *Granholm v, Heald,* 544 U.S. at 490.[12]

---

[12]The Williams and Ribisl article cited by Intervenors, Br. at 28, is irrelevant. It found that minors could order alcohol online successfully when neither the seller nor shipper were required to verify age.

- Home deliveries do not increase consumption. Data from the National Institutes of Health show that states that allow cross-border home deliveries of wine do not have higher per capita consumption rates than states that prohibit interstate deliveries. (Apx. 131-35). The defendants concede that there are no differences in consumption between states that do and do not allow home delivery of wine. Intervenor Br. at 30, n.14.

- They do not cause an increase in adverse alcohol-related behavior, such as drunk driving. NHTSA Traffic Safety Facts (Apx. 094-102).

- They do not increase the risk of unsafe products. States that allow home deliveries have not experienced any incidents whatsoever of unsafe wine being delivered. Wark report ¶ 52 (Apx. 050). This is hardly surprising because wine is heavily regulated by the federal Tax and Trade Bureau, 27 CFR 24.1 et seq., the FDA, 21 CFR 110.35, and every state. The defendants cite to one incident in 2021 when a producer notified a wholesaler that it wanted to recall one of its wines, but nothing suggests that was because the wine was unsafe. State Br. at 48.

## E. Requiring that wine pass through an in-state wholesaler serves no public safety purpose

The defendants argue that requiring wine to pass through an in-state wholesaler is important to public safety but are at a loss to explain why. Wholesalers have no role in selling to consumers, where problems related to consumption and youth access might arise. They have no role in production, where problems related to product defects might arise.

The Rhode Island legislature clearly does not consider the wholesalers to be important to public safety because it does not require alcohol to pass through a wholesaler. Wineries, breweries and distillers may sell directly to consumers. R.I. GEN. L. § 3-6-1(b). Out-of-state wineries may sell and ship wine directly to consumers. R.I. GEN. L. § 3-4-8(a). Residents may buy and carry home up to three gallons of wine from an out-of-state retailer that has not passed through a Rhode Island wholesaler. R.I. GEN. L. §§ 3-4-1, 3-1-1(9). The State's sudden concern in this one context about the danger of bypassing wholesalers is simply a pretext for protecting in-state economic interests.[13]

---

[13]The economic interest of wholesalers is readily apparent from the fact that three different groups of wholesalers have filed briefs in this case: Intervenor, Br. at 1 (R.I. wholesalers); Wine & Spirits Wholesalers of Am; and Center for Alcohol Policy, Br. at i (beer wholesalers).

There is only one public safety argument the defendants have been able to come up with: wholesalers keep records that could be useful in the event that there were ever a need to recall an unsafe wine product. State Br. at 47-48; Intervenor Br. at 23-24. The argument is nonsense. Record-keeping ability has been rejected as a justification for discrimination. *Granholm v. Heald,* 544 U.S. at 492 ("Financial records and sales data can be mailed, faxed, or submitted via e-mail"); *Tenn. Wine*, 139 S.Ct. at 2475 (argument insufficient because of improvements in technology). Unsafe wine is not an actual problem because there are no known incidents of it. Wark Report ¶ 52 (Apx. 050). The defendants cite only one wine recall for any reason, and it was not for safety. Mancini Aff. ¶ 11 (Apx. 443). Even in that one situation, the recall was handled by the producer, not the State. The notice was sent to all wholesalers who handled the product, not just those in Rhode Island, so the wholesalers in other states would have recalled it just as the Rhode Island wholesalers did. Ironically, if there ever were a recall of an unsafe wine, consumers who ordered it online and had it shipped would be safer than those who purchased it in person at a local retailer. The seller would have a record of the former but not of the latter,

## F. Inspections

The defendants spend a substantial portion of their briefs explaining all the ways Rhode Island officials inspect the premises of in-state retailers. It is unclear why. The issue is whether the State may ban out-of-state retailers from making home deliveries of wine because those deliveries pose a threat to public safety that cannot be ameliorated by less discriminatory means. If inspections were relevant at all, the defendants would have to show that other states do not conduct inspections.

The fact that Rhode Island conducts on-site inspections has little relevance to the safety of home deliveries that take place off the retailers' premises. The State rhetorically touts that it has "boots on the ground," State Br. at 48, but presents no evidence that those booted officials are inspecting premises for anything having to do with home deliveries or to gather any information they could not get electronically.

The State has presented no evidence that other states do not engage in similar inspections and it is ludicrous and insulting to those states to suggest that they do not care enough about public safety to conduct them. Every state has on-site inspection and enforcement procedures. *See* 2018 Report to Congress on the Prevention and Reduction of Underage

Drinking, Supplemental Materials: Enforcement Data.[14] Indeed, in every case involving cross-border wine shipping, the defending state claims it has vigorous inspection and safety programs. *E.g.*, *B-21 Wines, Inc. v. Bauer*, 36 F.4th at 217 (North Carolina); *Lebamoff Enterpr., Inc. v. Whitmer*, 956 F.3d at 870 (Michigan); *Wine Country Gift Baskets.com v. Steen*, 612 F.3d at 813 (Texas); *Arnold's Wines v. Boyle*, 571 F.3d at 188 (New York).

The argument is contrived in any event. Rhode Island already allows out-of-state wineries to ship wine directly to residents despite having no physical presence in the state that can be "inspected" and it has not experienced any public health, safety or other problems. Def. Interrog. 19 (Apx. 181-82). The Supreme Court has rejected this argument twice. *Tenn. Wine,* 139 S.Ct. at 2475 (in this age of computer networks, there is no shortage of less burdensome, yet still suitable, options); *Granholm v. Herald*, 544 U.S. at 492 ("ensuring regulatory accountability... can also be achieved through the alternative of an evenhanded licensing requirement.").

---

[14]https://www.stopalcoholabuse.gov/media/ReportToCongress/2018/report_main/Enforcement_Data_508.pdf (viewed May 16, 2023)

## G. Ability to revoke license

The defendants assert as a reason for banning home deliveries by out-of-state retailers that it cannot deter misconduct by threatening to revoke their licenses. The argument is specious. If Rhode Island required a license for out-of-state retailers, it would have the same ability to revoke them as it has for local retailers, and the Supreme Court has already held that licensing is a reasonable alternative. *Granholm v. Heald*, 544 U.S. at 491-92. *Accord, Family Winemakers*, 592 F.3d at 17.

The defendants respond that the threat of revocation might not be significant enough to force them to comply with Rhode Island laws because they could continue to operate in their home states. State Br. at 52; Intervenor Br. at 22. The argument is speculative and unsupported by any concrete evidence. To the extent that it suggests that only the threat of an economic death penalty -- putting a retailer out of business altogether -- will deter misconduct, the argument contradicts the well known principle that increasing the severity of punishment does not produce an increased deterrent effect. *Five Things About Deterrence,* Nat'l Inst. of Justice (2016).[15] In any event, the premise is false. Most other

_____

[15]https://ncjrs.gov/pdffiles1/nij/247350.pdf (viewed May 12, 2023).

states will revoke a retailer's local license for a serious offense committed in another state. *E.g.*, NCGS 18B-900(b); NY State Liquor Auth. Rules § 53.1; 235 Ill. Comp. Stat. 5/6-2(12).

## V. Remedy

In our opening brief, we contend that this court should either remand this case to the District Court for fashioning a remedy in consultation with the parties and legislative officials, or enjoin the offending provisions and extend home delivery privileges to out-of-state retailers. Neither defendant addresses remedy or disputes the arguments Plaintiffs made in their opening brief.

## VI. Conclusion

Rhode Island has erected a protectionist trade barrier that gives in-state wine retailers the exclusive and lucrative privilege to make home deliveries of wine. The State has not proved that cross-border deliveries threaten public health or safety in some unique way nor shown why licensing and regulating those deliveries would be ineffective. The restrictions should be declared unconstitutional under *Tenn. Wine, Granholm v Heald,* and *Family Winemakers.*

> Respectfully submitted:
> *Attorneys for plaintiffs-appellants*

s/ James A. Tanford
James A. Tanford, *counsel of record*
Robert D. Epstein
Epstein Seif Porter & Beutel, LLP
50 S. Meridian St. #505
Indianapolis IN 46204
(317) 639-1326
tanford@indiana.edu
rdepstein@aol.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(I) because it contains no more than 6500 words in sections identified by Fed. R. App. P. 32(f). It contains 6037 words, as calculated by the word count program in WordPerfect X9. It complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because it was prepared in 14-point Century Schoolbook.

s/ James A. Tanford
James A. Tanford

## CERTIFICATE OF SERVICE

I certify that on May 18, 2023, the foregoing Reply Brief was filed and served on all parties through the court's CM/ECF system.

s/ James A. Tanford
James A. Tanford